TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
LUCIA X. ROIBAL (CA SBN 306721)
LRoibal@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

ADAM J. HUNT, *pro hac vice*
AdamHunt@mofo.com
Morrison & Foerster LLP
250 West 55th Street
New York, New York 10019-9601
(212) 336-4341
(212) 468-7900 (fax)

Attorneys for Defendants
UBER TECHNOLOGIES, INC. AND
RASIER, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL FRIDMAN, DANNY GESEL REZNIK FRIDMAN, and JAKE LECHNER, individually and on behalf of all others similarly situated.<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC. and RASIER, LLC,<br><br>Defendants. | Case No. 4:18-cv-02815-HSG<br><br>**NOTICE OF MOTION AND MOTION BY DEFENDANTS UBER TECHNOLOGIES, INC. AND RASIER, LLC TO COMPEL ARBITRATION AS TO MICHAEL FRIDMAN AND DANNY GESEL REZNIK FRIDMAN, AND TO STAY THE ACTION, INCLUDING JAKE LECHNER'S CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Judge:       Hon. Haywood S. Gilliam, Jr.<br>Action Filed:  May 13, 2018<br>Hearing Date: September 27, 2018<br>Time:        2:00 p.m.<br>Courtroom:   2 |

1

**NOTICE OF MOTION AND MOTION**

2

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

3

   **PLEASE TAKE NOTICE THAT** on September 27, 2018 at 2:00 p.m., or as soon

4

thereafter as the matter may be heard in the U.S. District Court, Northern District of California,

5

Oakland Division, located at 1301 Clay Street, Oakland, California, in Courtroom 2 before the

6

Honorable Haywood S. Gilliam, Jr., Defendants Uber Technologies, Inc. and Rasier, LLC

7

("Defendants" or "Uber"), will, and hereby do, move the Court pursuant to the Federal

8

Arbitration Act, 9 U.S.C. § 1 *et seq.*, for an order to compel arbitration on an individual basis as

9

to Plaintiff Michael Fridman ("Fridman") and  Danny Gesel Reznik Fridman ( "Reznik")

10

(collectively the "Fridman Plaintiffs") and to stay this action in its entirety pending those

11

individual arbitration proceedings, including staying the claims of Plaintiff Jake Lechner

12

("Lechner").[1]

13

   This motion is based on this Notice of Motion and Motion, the accompanying

14

Memorandum of Points and Authorities, the Declarations of Greg DiMattina, Patrick Flanagan,

15

and Dylan Tonti, and all exhibits thereto, the pleadings and papers on file in this action, and on

16

such other written and oral argument as may be presented to the Court.

17

18

19

20

21

22

   [1] This motion satisfies Uber's obligation to respond to the Complaint at this stage. *See Lamkin v. Morinda Props. Weight Parcel, LLC*, 440 F. App'x 604, 607-08 (10th Cir. 2011)

23

holding that parties moving to compel arbitration need not file an answer or assert potential defenses because such a requirement would undercut the "right not to litigate"); *JS Barkats, PLLC v. BE, Inc.*, No. 12 Civ. 6779(JFK), 2013 WL 444919, at *2 (S.D.N.Y. Feb. 6, 2013)

24

("[P]arties are permitted to file motions to stay in lieu of an answer or other dispositive

25

motions."). Uber reserves the right to file a Rule 12(b) motion at a later time. *See Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1475 (9th Cir. 1988) (holding that a prior motion to

26

dismiss or stay based on grounds other than Rule 12 did not bar a later Rule 12(b) motion); *Marchand v. Northrop Grumman Corp.*, No. 16-cv-06825-BLF, 2017 WL 2633132, at *6 (N.D.

27

Cal. June 19, 2017) (noting the case law holding that "Defendant's Motion to Compel Arbitration and to Dismiss suffices as a 'responsive pleading' to Plaintiff's Complaint or as an unenumerated

28

motion under Rule 12(b)" (citation omitted)).

1

2   Dated: July 27, 2018

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TIFFANY CHEUNG
ADAM J. HUNT, *pro hac vice*
LUCIA X. ROIBAL
MORRISON & FOERSTER LLP


By:   /s/ Tiffany Cheung
      TIFFANY CHEUNG

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and
RASIER, LLC

DEFS.' MOT. TO COMPEL ARBITRATION AND FOR STAY
CASE NO. 4:18-CV-02815-HSG

sf-3916410

1

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ............................................................................... 1

II.    FACTUAL BACKGROUND .............................................................. 2

       A.     The Uber Apps. .......................................................................... 2

              1.     The Uber Driver App and the Transportation Services. ............................ 2

              2.     The Uber Driver App and the Delivery Services. ...................................... 3

       B.     When the Fridman Plaintiffs Voluntarily Registered for Uber's Services,
              They Agreed to Uber's Services Agreements. ......................................................... 3

       C.     The Services Agreements and Arbitration Provision. ............................................. 4

       D.     The Fridman Plaintiffs Agreed to Receive the Text Messages at Issue. ................. 5

       E.     The Fridman Plaintiffs Ignored The Arbitration Provision and Filed Suit. ........... 6

III.   LEGAL STANDARD .......................................................................... 6

       A.     The FAA Governs the Agreement. ......................................................................... 7

       B.     California and Florida Law Govern Any Dispute Concerning the
              Enforceability Or Scope of the Arbitration Provision. ........................................... 8

              1.     California Law Applies to Michael Fridman's Arbitration
                     Provision. .................................................................................... 8

              2.     Florida Law Applies to Reznik's Arbitration Provision. ............................ 8

       C.     The Arbitration Provision Is Valid and Must Be Enforced. ................................... 9

              1.     The Fridman Plaintiffs Agreed to Arbitrate "Gateway" Arbitrability
                     Issues. ......................................................................................... 9

              2.     Even if the Court Finds That It, Rather Than the Arbitrator, Should
                     Decide Arbitrability, Both Elements Are Satisfied. .................................. 11

                     a.     The Fridman Plaintiffs Entered Into Valid Agreements to
                            Arbitrate. ................................................................. 12

                     b.     The Fridman Plaintiffs' Claims Fall Squarely Within the
                            Scope of the Arbitration Provision. .................................. 14

              3.     The Arbitration Provision Is Neither Procedurally Nor
                     Substantively Unconscionable. ...................................................... 16

       D.     Plaintiffs Must Arbitrate Their Claims On An Individual Basis ............................ 17

       E.     This Action—Including Lechner's Claims—Should Be Stayed Pending
              Completion of the Fridman Plaintiffs' Individual Arbitrations. .......................... 18

              1.     This Action Should Be Stayed As to Fridman and Reznik. ...................... 18

              2.     Lechner's Identical TCPA Claim Also Should Be Stayed. ...................... 188

IV.    CONCLUSION .................................................................................. 20

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*5381 Partners LLC v. Shareasale.com, Inc.*,
5
   No. 12-CV-4263 (JFB)(AKT), 2013 WL 5328324 (E.D.N.Y. Sept. 23, 2013).......................13

6

*Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*,
   855 F.2d 1470, 1475 (9th Cir. 1988)............................................................................................ i
7

*Allied-Bruce Terminix Cos. v. Dobson*,
8
   513 U.S. 265 (1995)....................................................................................................................7

9

*Amirhamzeh v. Wells Fargo Bank, N.A.*,
10
   No. 14-CV-02123-VC, 2014 WL 12610227 (N.D. Cal. Oct. 31, 2014)..................................18

11

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)............................................................................................................6, 7, 18
12

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
13
   475 U.S. 643 (1986)..................................................................................................................14

14

*Bischoff v. DirecTV, Inc.*,
15
   180 F. Supp. 2d 1097 (C.D. Cal. 2002)....................................................................................19

16

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015)..............................................................................................9, 10
17

*Bruster v. Uber Techs., Inc.*,
18
   188 F. Supp. 3d. 658 (N.D. Ohio May 23, 2016),
   *recons. denied*, 2016 WL 4086786 (N.D. Ohio Aug. 2, 2016)............................................1, 11
19

*Carey v. Uber Techs., Inc.*,
20
   No. 1:16-cv-1058, 2017 WL 1133936 (N.D. Ohio Mar. 27, 2017) ...........................................2

21

*Cavallo v. Uber Techs, Inc.*,
22
   No. 16-4264 (FLW), 2017 WL 2362851 (D.N.J. May 31, 2017)..............................................1

23

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000)...................................................................................................7
24

*Congdon v. Uber Techs., Inc.*,
25
   226 F. Supp. 3d 983 (N.D. Cal. 2016) .....................................................................................2

26

*Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*,
27
   748 F.3d 249 (5th Cir. 2014).....................................................................................................9

28

iv

sf-3916410

*Crawford v. Beachbody, LLC,*
    No. 14cv1583-GPC(KSC), 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ...............................12

*Davis v. Uber Techs, Inc.,*
    No. 16-6122, 2017 WL 3167807 (E.D. Pa. July 25, 2017).........................................................1

*Delgado v. Progress Fin. Co.,*
    No. 1:14-cv-00033-LJO-MJS, 2014 WL 1756282 (E.D. Cal. May 1, 2014) ..........................14

*DIRECTV, Inc. v. Imburgia*
    136 S. Ct. 463 (2015)................................................................................................................17

*Dorward v. Macy's Inc.,*
    No. 2:10-cv-669-FtM-29DNF, 2011 WL 2829118 (M.D. Fla. July 20, 2011).........................13

*Druyan v. Jagger,*
    508 F. Supp. 2d 228 (S.D.N.Y. 2007)......................................................................................12

*Epic. Syst. Corp. v. Lewis,*
    138 S. Ct. 1612, 1622 (2018) ...................................................................................................18

*In re Facebook Biometric Info. Privacy Litig.,*
    185 F. Supp. 3d 1155 (N.D. Cal. 2016) ...................................................................................12

*First Options of Chi., Inc. v. Kaplan,*
    514 U.S. 938 (1995) ..................................................................................................................11

*Fisher v. Rent-A-Center, Inc.,*
    No. 14-cv-00918-MCE-AC, 2014 WL 3729553 (E.D. Cal. July 24, 2014) ...........................15

*Fteja v. Facebook, Inc.,*
    841 F. Supp. 2d 829 (S.D.N.Y. 2012)......................................................................................12

*Guan v. Uber Techs., Inc.,*
    236 F. Supp. 3d 711 (E.D.N.Y. 2017) .......................................................................................2

*Gunn v. Uber Techs., Inc.,*
    No. 1:16-cv-01668-SEB-MJD, 2017 WL 386816 (S.D. Ind. Jan. 27, 2017)............................2

*Hancock v. Am. Tel. & Tel. Co.,*
    701 F.3d 1248 (10th Cir. 2012).................................................................................................12

*Hill v. G E Power Sys., Inc.,*
    282 F.3d 343 (5th Cir. 2002).....................................................................................................19

*Howsam v. Dean Witter Reynolds, Inc.,*
    537 U.S. 79 (2002) ....................................................................................................................11

*Iskanian v. CLS Transp. L.A., LLC,*
    59 Cal. 4th 348 (2014) ..............................................................................................................18

v

sf-3916410

*James v. Portfolio Recovery Assocs., LLC*,
No. 14-cv-03889-RMW, 2015 WL 720195 (N.D. Cal. Feb. 20, 2015) ...................................8

*Jasso v. Money Mart Express, Inc.*,
879 F. Supp. 2d 1038 (N.D. Cal. 2012) .................................................................18

*Johnmohammadi v. Bloomingdale's, Inc.*,
755 F.3d 1072 (9th Cir. 2014).............................................................................18

*JS Barkats, PLLC v. BE, Inc.*,
No. 12 Civ. 6779(JFK), 2013 WL 444919 (S.D.N.Y. Feb. 6, 2013) ............................ i

*Kilgore v. Key Bank, Nat. Ass'n*,
718 F.3d 1053 (9th Cir. 2013).............................................................................17

*Koyoc v. Progress Fin. Co.*,
No. CV 13-09165-RSWL, 2014 WL 1878903 (C.D. Cal. May 9, 2014) ...........................14, 15

*Lamour v. Uber Techs, Inc.*,
No. 1:16-CIV-21449, 2017 WL 878712 (S.D. Fla. Mar. 1, 2017) ...........................................2

*Lamkin v. Morinda Props. Weight Parcel, LLC*,
440 F. App'x 604 (10th Cir. 2011) ......................................................................... i

*Lee v. Uber Techs., Inc.*,
208 F. Supp. 3d 886 (N.D. Ill. 2016) ...............................................................1, 11

*Marc v. Uber Techs., Inc.*,
No. 2:16-cv-579-FtM-99MRM, 2016 WL 7210886 (M.D. Fla. Dec. 13, 2016) ......................2

*Marchand v. Northrop Grumman Corp.*, No. 16-cv-06825-BLF, 2017 WL
2633132 (N.D. Cal. June 19, 2017) ....................................................................... i

*McAdoo v. New Line Transp., LLC*,
Case No. 8:16-cv-1917-T-27AEP, 2017 WL 942114 (M.D. Fla. Mar. 9, 2017).....................13

*Meyer v. Kalanick*,
200 F. Supp. 3d 408 (S.D.N.Y. 2016),
*vacated, Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017)................................8

*Micheletti v. Uber Techs., Inc.*,
213 F. Supp. 3d 839 (W.D. Tex. 2016)............................................................1, 11

*Mohamed v. Uber Technologies, Inc.*,
848 F.3d 1201 (9th Cir. 2016)................................................................1, 2, 17

*Mortensen v. Bresnan Commc'ns LLC*,
722 F.3d 1151 (9th Cir. 2013)................................................................6, 7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) .................................................................................................11, 18, 19, 20

*Mumin v. Uber Techs., Inc.*,
  239 F. Supp. 3d 507 (E.D.N.Y. 2017) .................................................................................1

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014)..................................................................................... 7. 12

*Olivares v. Uber Techs, Inc.*,
  No. 16 C 6062, 2017 WL 3008278 (N.D. Ill. July 14, 2017) .............................................1

*Oracle Am., Inc. v. Myriad Grp., A.G.*,
  724 F.3d 1069 (9th Cir. 2013)......................................................................................9, 10

*Ortega v. Uber Techs., Inc.*,
  No. 15-CV-7387 (NGG) (JO), 2017 WL 1737636 (E.D.N.Y. May 2, 2017)..........................2

*PacifiCare Health Sys., Inc. v. Book*,
  538 U.S. 401 (2003) ..........................................................................................................11

*Peng v. Uber Techs., Inc.*,
  237 F. Supp. 3d 36 (E.D.N.Y. 2017) ..................................................................................2

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
  55 Cal. 4th 223 (2012) ......................................................................................................16

*Pulte Home Corp. v. Ply Gem Indus., Inc.*,
  804 F. Supp. 1471 (M.D. Fla 1992) ...................................................................................9

*Rent-A-Center, W., Inc. v. Jackson*,
  561 U.S. 63 (2010) ..............................................................................................................9

*Republic of Nicaragua v. Standard Fruit Co.*,
  937 F.2d 469 (9th Cir. 1991)..............................................................................................18

*Richemond v. Uber Techs., Inc.*,
  263 F. Supp. 3d 1312 (S.D. Fla. 2017) ..........................................................................2, 11

*Rimel v. Uber Techs., Inc.*,
  No. 6:15-cv-2191-Orl-41KRS, 2016 WL 6246812 (M.D. Fla. Aug. 4, 2016) ..................2, 17

*In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*,
  298 F. Supp. 3d 1285 (N.D. Cal. 2018) .............................................................................19

*Sanchez v. Valencia Holding Co., LLC*,
  61 Cal. 4th 899 (2015) ......................................................................................................16

*Schoendorf v. Toyota of Orlando*,
  No. 6:08–cv–767–Orl–19DAB, 2009 WL 1075991 (M.D. Fla. Apr. 21, 2009) ..................13

vii

*Scroggins v. Uber Techs, Inc.*,
  No. 1:16-cv-01419-SEB-MJD, 2017 WL 373299 (S.D. Ind. Jan. 26, 2017)............................2

*Segal v. Amazon.com, Inc.*,
  763 F. Supp. 2d 1367 (S.D. Fla. 2011) ...............................................................13

*Sena v. Uber Techs. Inc.*,
  No. CV-15-02418-PHX-DLR, 2016 WL 1376445 (D. Ariz. Apr. 7, 2016),
  *recons. denied*, 2016 WL 4064584 (D. Ariz. May 03, 2016) .............................2, 11

*Shea v. BBVA Compass Bancshares, Inc.*,
  No. 1:12-cv-23324-KMM, 2013 WL 869526 (S.D. Fla. Mar. 7, 2013) .................10

*Sherman v. AT&T Inc.*,
  No. 11 C 5857, 2012 WL 1021823 (N.D. Ill. Mar. 26, 2012) ...............................12

*Sherman v. RMH, LLC*,
  No. 13cv1986-WQH-WMc, 2014 WL 30318 (S.D. Cal. Jan. 2, 2014).....................15

*Shierkatz RLLP v. Square, Inc.*,
  No. 15-cv-02202-JST, 2015 WL 9258082 (N.D. Cal. Dec. 17, 2015) ....................10

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999)................................................................................14

*Singh v. Uber Techs., Inc.*,
  235 F. Supp. 3d 656 (D.N.J. 2017) .....................................................................2

*Snap-on Bus. Sols. Inc. v. O'Neil & Assocs., Inc.*,
  708 F. Supp. 2d 669 (N.D. Ohio 2010) ................................................................12

*Starke v. Gilt Groupe, Inc.*,
  No. 13 Civ. 5497(LLS), 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ..................12

*Suarez v. Uber Techs., Inc.*,
  No. 8:16-cv-166-T-30MAP, 2016 WL 2348706 (M.D. Fla. May 4, 2016),
  *aff'd*, 688 F. App'x 777 (11th Cir. 2017)........................................................ *passim*

*Swift v. Zynga Game Network, Inc.*,
  805 F. Supp. 2d 904 (N.D. Cal. 2011) .................................................................12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. 07-1827 SI, 2011 WL 2650689 (N.D. Cal. July 6, 2011) ...............................14

*United States v. Sutcliffe*,
  505 F.3d 944 (9th Cir. 2007)...............................................................................7

*Van Patten v. Vertical Fitness Group, LLC*,
  847 F.3d 1037 (9th Cir. 2017)............................................................................16

*Varon v. Uber Techs., Inc.*,
  No. MJG-15-3650, 2016 WL 1752835 (D. Md. May 3, 2016),
  *recons. denied*, 2016 WL 3917213 (D. Md. July 20, 2016) ..........................................1, 11, 17

*Wolf v. Langemeier*,
  No. 2:09-CV-03086-GEB-EFB, 2010 WL 3341823 (E.D. Cal. Aug. 24, 2010)...............19, 20

*WorldCrisa Corp. v. Armstrong*,
  129 F.3d 71 (2d Cir. 1997)...........................................................................................19

*Zawada v. Uber Techs., Inc.*,
  No. 16-cv-11334, 2016 WL 7439198 (E.D. Mich. Dec. 27, 2016),
  *judgment aff'd*, 727 F. App'x 839 (6th Cir. 2018) .....................................................2

*Zelkind v. Flywheel Networks, Inc.*,
  No. 15-cv-03375-WHO, 2015 WL 9994623 (N.D. Cal. Oct. 16, 2015)...................................10

*Zorilla v. Uber Techs, Inc.*,
  No. 4:16-CV-615, 2017 WL 3278061 (S.D. Tex. Mar. 16, 2017)...............................................1

**Statutes**

Federal Arbitration Act,
  9 U.S.C. §§ 1 *et seq.*.................................................................................................. i
  9 U.S.C. § 1 ..........................................................................................................7
  9 U.S.C. § 2 ..........................................................................................................7
  9 U.S.C. § 3 ........................................................................................................18
  9 U.S.C. § 4 ..........................................................................................................9
  9 U.S.C. § 9 ........................................................................................................18
  9 U.S.C. § 10 ......................................................................................................18
  9 U.S.C. § 11 ......................................................................................................18

Telephone Consumer Protection Act,
  47 U.S.C. § 227. .......................................................................................... *passim*

**Rules**

JAMS Comprehensive Arbitration Rules & Procedures, Rule 11(b),
  https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule 11 ....................................10

**Other Authorities**

Restatement (Second) of Conflict of Laws, § 187 ..........................................................8

1

**STATEMENT OF ISSUES TO BE DECIDED**

2

This motion raises the following issues:

3

      1.      Did the Fridman Plaintiffs enter into binding agreements to arbitrate their claims in

4

this case?

5

      2.      Does the "delegation" clause in the Fridman Plaintiffs' Arbitration Provision

6

require the arbitrator to decide all gateway issues of arbitrability?

7

      3.      If not, does the Arbitration Provision require this Court to compel Plaintiffs'

8

claims to arbitration?

9

      4.      Should the Court stay the entire action, including the identical claims of Plaintiff

10

Jake Lechner, pending the Fridman Plaintiffs' arbitration?

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.     INTRODUCTION**

3          Plaintiffs Michael Fridman and Danny Gesel Reznik Fridman (the "Fridman Plaintiffs")

4  cannot unilaterally repudiate their binding contracts with Uber by bringing a putative Telephone

5  Consumer Protection Act ("TCPA") class action in federal court.  When the Fridman Plaintiffs

6  signed up to use Uber's technology, each expressly agreed to arbitrate their claims on an

7  individual basis.  Filing this putative class action in federal court violates their binding agreement

8  with Uber, and this action cannot proceed.

9          The Fridman Plaintiffs signed up to use the Uber App to receive requests as drivers,

10  Michael Fridman as an independent transportation provider and Danny Gesel Reznik Fridman

11  ("Reznik") as a delivery provider.  But to use Uber's technology, the Fridman Plaintiffs entered

12  into contracts with Uber (the "Services Agreements") that specify the terms of use and financial

13  terms governing the parties' relationship.  The Services Agreements include a clear and

14  conspicuous arbitration provision (the "Arbitration Provision"), pursuant to which the Fridman

15  Plaintiffs:  (1) agreed to arbitrate "all disputes between You and the Company or Uber . . .

16  including but not limited to any disputes arising out of or related to this Agreement and disputes

17  arising out of or related to your relationship with [Uber], including termination of the

18  relationship;" and (2) waived resolution of any dispute "by way of class, collective, or

19  representative action."

20          There is no question the Arbitration Provision is valid and covers the Fridman Plaintiffs'

21  claims.  *See, .e.g., Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201 (9th Cir. 2016) (enforcing

22  Uber's arbitration provision in a nearly identical agreement).  In addition to the Ninth Circuit, at

23  least 24 different district courts have enforced Uber's arbitration provisions.[2]  Moreover, the

24  _____

25  [2] *See, e.g., Davis v. Uber Techs, Inc.*, No. 16-6122, 2017 WL 3167807 (E.D. Pa. July 25, 2017); *Olivares v. Uber Techs, Inc.*, No. 16 C 6062, 2017 WL 3008278 (N.D. Ill. July 14, 2017); *Cavallo v. Uber Techs, Inc.*, No. 16-4264 (FLW), 2017 WL 2362851 (D.N.J. May 31, 2017);

26  *Zorilla v. Uber Techs, Inc.*, No. 4:16-CV-615, 2017 WL 3278061 (S.D. Tex. Mar. 16, 2017); *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507 (E.D.N.Y. 2017); *Micheletti v. Uber Techs., Inc.*, 213 F. Supp. 3d 839 (W.D. Tex. 2016); *Lee v. Uber Techs., Inc.*, 208 F. Supp. 3d 886 (N.D.

27  Ill. 2016); *Bruster v. Uber Techs., Inc.*, 188 F. Supp. 3d. 658 (N.D. Ohio May 23, 2016), *recons. denied*, 2016 WL 4086786 (N.D. Ohio Aug. 2, 2016); *Varon v. Uber Techs., Inc.*, No. MJG-15-

28

1

sf-3916410

Ninth Circuit in *Mohamed* unanimously upheld the validity of the delegation clause, which means that the arbitrator, and not a court, must decide the threshold questions of arbitrability in the first instance.  But even if the Court were to decide arbitrability, the Arbitration Provision must be enforced under well-established precedent.  The Court should therefore compel the Fridman Plaintiffs to arbitration, and their claims should be stayed pending their individual arbitrations.

Finally, the Court also should stay Lechner's identical TCPA claim pending a resolution of the Fridman Plaintiffs' individual arbitrations.[3]  Following the United States Supreme Court's interpretation of the FAA's "arbitration first" rule, Lechner's claims should be stayed to avoid inconsistent outcomes and to inform the Court's subsequent disposition of his claim.

## II.   FACTUAL BACKGROUND

### A.   The Uber Apps.

#### 1.   The Uber Driver App and the Transportation Services.

Uber is a technology company that, among other things, offers a smartphone application for riders ("Uber Rider App") and a smartphone application for transportation providers (the "Uber Driver App") that together facilitate connections between riders looking for transportation and independent transportation providers looking for riders.  (Declaration of Greg DiMattina in Support of Defs. Mot. to Compel Arbitration and for Stay ("DiMattina Decl.") ¶ 3.)  Uber charges

---

3650, 2016 WL 1752835 (D. Md. May 3, 2016), *recons. denied*, 2016 WL 3917213 (D. Md. July 20, 2016); *Suarez v. Uber Techs., Inc.*, No. 8:16-cv-166-T-30MAP, 2016 WL 2348706 (M.D. Fla. May 4, 2016), *aff'd*, 688 F. App'x 777 (11th Cir. 2017); *Sena v. Uber Techs. Inc.*, No. CV-15-02418-PHX-DLR, 2016 WL 1376445 (D. Ariz. Apr. 7, 2016), *recons. denied*, 2016 WL 4064584 (D. Ariz. May 03, 2016); *Rimel v. Uber Techs., Inc.*, No. 6:15-cv-2191-Orl-41KRS, 2016 WL 6246812 (M.D. Fla. Aug. 4, 2016); *Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36 (E.D.N.Y. 2017); *Congdon v. Uber Techs., Inc.*, 226 F. Supp. 3d 983 (N.D. Cal. 2016); *Richemond v. Uber Techs., Inc.*, 263 F. Supp. 3d 1312 (S.D. Fla. 2017); *Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711 (E.D.N.Y. 2017); *Zawada v. Uber Techs., Inc.*, No. 16-cv-11334, 2016 WL 7439198 (E.D. Mich. Dec. 27, 2016), *judgment aff'd*, 727 F. App'x 839 (6th Cir. 2018); *Carey v. Uber Techs., Inc.*, No. 1:16-cv-1058, 2017 WL 1133936 (N.D. Ohio Mar. 27, 2017); *Lamour v. Uber Techs. Inc.*, No. 1:16-CIV-21449, 2017 WL 878712 (S.D. Fla. Mar. 1, 2017); *Scroggins v. Uber Techs, Inc.*, No. 1:16-cv-01419-SEB-MJD, 2017 WL 373299 (S.D. Ind. Jan. 26, 2017); *Gunn v. Uber Techs. Inc.*, No. 1:16-cv-01668-SEB-MJD, 2017 WL 386816 (S.D. Ind. Jan. 27, 2017); *Singh v. Uber Techs. Inc.*, 235 F. Supp. 3d 656 (D.N.J. 2017); *Ortega v. Uber Techs. Inc.*, No. 15-CV-7387 (NGG) (JO), 2017 WL 1737636 (E.D.N.Y. Mav 2, 2017); *Marc v. Uber Techs., Inc.*, No. 2:16-cv-579-FtM-99MRM, 2016 WL 7210886 (M.D. Fla. Dec. 13, 2016).

[3] Lechner alleges that he has never been or applied to become an Uber driver.  (Compl. ¶ 6.)

1   a service fee to transportation providers for their use of the Uber App.  (*Id.*)  The Uber Rider and

2   Driver Apps are available in over 175 cities across the country.  (*Id.*)  Any driver who wishes to

3   use the Uber Driver App to receive requests made by riders must first enter into a Technology

4   Services Agreement with Rasier LLC, a wholly-owned subsidiary of Uber, or another related

5   entity, to use the application.   (*Id.* ¶¶ 2, 4-5.)

6                        **2.      The Uber Driver App and the Delivery Services.**

7            Uber also offers technology that enables users and merchants to arrange for the delivery of

8   goods by independent delivery partners through the Uber Driver App.  (Declaration of Patrick

9   Flanagan in Support of Defs. Mot. to Compel Arbitration and to Stay the Action ("Flanagan

10  Decl.") ¶ 3.)  Any driver who wishes to use the Uber Driver App to arrange for the delivery of

11  goods must first enter into an agreement with Portier, LLC a wholly-owned subsidiary of Uber

12  Technologies, Inc.  (*Id.* ¶¶ 2, 5.)

13                **B.      When the Fridman Plaintiffs Voluntarily Registered for Uber's
                            Services, They Agreed to Uber's Services Agreements.**
14

15          Before using the Uber Driver App, drivers must first enter into an agreement with the

16  applicable Uber subsidiary.[4]  (DiMattina Decl. ¶ 5; Flanagan Decl. ¶ 5.)  To do so, he or she must

17  create an Uber account to complete the sign-up process.  (DiMattina Decl. ¶ 4; Flanagan Decl.

18  ¶ 4; Declaration of Dylan Tonti in Support of Defs. Mot. to Compel Arbitration and for Stay

19  ("Tonti Decl.") ¶¶ 3-5; 10-12.)  After completing the sign-up process, the new driver-applicant

20  logs onto the Uber App and is given the opportunity to review the agreement by clicking a

21  hyperlink on the screen.  (DiMattina Decl. ¶ 6; *id*, Ex. A; Flanagan Decl. ¶ 6; *id.*, Ex. A.)  The

22  hyperlink instructs the user to review documents and agree to the Services Agreement.  (*Id.*)

23  Each Fridman Plaintiff was free to spend as much time as he wished reviewing the Services

24  Agreement on his smartphone.  (DiMattina Decl. ¶ 7; Flanagan Decl. ¶ 7.)  But to advance past

25  _____

26          [4] There are two agreements at issue:  (i) the December 2015 Rasier Technology Services
    Agreement ("the December 2015 TSA), which Michael Fridman entered into; and (ii) the August
27  26, 2016 Portier, LLC Technology Services Agreement (the "August 2016 TSA"), which Reznik
    entered into.  (Tonti Decl. ¶ 5, 12; *id.*, Exs. B, F.)  The two Services Agreements are substantially
    similar and will be referred to collectively as the "Services Agreements."  Citations to both of the
28  Services Agreements will be provided.

                                                  3

the screen and use the Uber App, each Fridman Plaintiff had to click "Yes, I agree" to the

Services Agreement.  (*Id.*)  After clicking, "Yes, I agree," each Fridman Plaintiff was asked to

"PLEASE CONFIRM THAT YOU HAVE REVIEWED ALL THE DOCUMENTS AND

AGREE TO ALL THE NEW CONTRACTS."  Each Fridman Plaintiff clicked on "Yes, I Agree"

to so confirm.  (DiMattina Decl. ¶ 8; Flanagan Decl. ¶ 8.)  After accepting the Services

Agreement twice, a copy of the Services Agreement was automatically transmitted to each

Fridman Plaintiff's Driver Portal, where they could review the Services Agreement again at their

leisure.  (DiMattina Decl. ¶ 11; Flanagan Decl. ¶ 11.)

### C.    The Services Agreements and Arbitration Provision.

Uber provided notice of the Arbitration Provision on the *very first page* of the Services

Agreements in all-capital, bolded text:

> **IMPORTANT: . . . PLEASE REVIEW THE ARBITRATION PROVISION
> SET FORTH BELOW [ ] CAREFULLY, AS IT WILL REQUIRE YOU TO
> RESOLVE DISPUTES WITH [UBER] ON AN INDIVIDUAL BASIS,
> EXCEPT AS PROVIDED IN SECTION 15.3, THROUGH FINAL AND
> BINDING ARBITRATION UNLESS YOU CHOOSE TO OPT OUT OF
> THE ARBITRATION PROVISION.**

(Tonti Decl., Ex. B at 1; *id.*, Ex. F at 1.)  Also, the language immediately preceding the

Arbitration Provision highlights the importance of the signatories' decision regarding arbitration

in all-capital, bolded text:

> **WHETHER TO AGREE TO ARBITRATION IS AN IMPORTANT
> BUSINESS DECISION . . . . YOU SHOULD TAKE REASONABLE STEPS
> TO CONDUCT FURTHER RESEARCH AND TO CONSULT WITH
> OTHERS INCLUDING BUT NOT LIMITED TO AN ATTORNEY . . . .**

(*Id.*, Ex. B § 15.3; *id.* Ex. F § 15.3.)

The Arbitration Provision is broad, applying to "all disputes between You and Uber . . .

including but not limited to any disputes arising out of or related to this Agreement and disputes

arising out of or related to Your relationship with [Uber]."  (*Id*, Ex. B § 15.3(i); *id.* Ex. F §

15.3(i).)  In addition, the Arbitration Provision covers "any dispute arising out of or related to this

Agreement or termination of the Agreement and survives after the Agreement terminates."  (*Id.*)

The Arbitration Provision likewise contains:  (1) a **delegation clause** stating that

". . . disputes arising out of or relating to interpretation or application of this Arbitration

Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision . . . shall be decided by an Arbitrator and not by a court or judge" (*id.*, Ex. B § 15.2)[5];  (2) a **class action waiver**, requiring signatories to arbitrate their claims on an individual basis and waiving claims brought on a class, collective, or private attorney general representative action (*id.*); and (3) a **right to opt-out of arbitration** within 30 days, as provided for in Section 15.3(viii):

> **Your Right to Opt Out of Arbitration.**
>
> **Arbitration is not a mandatory condition of your contractual relationship with [Uber]. If You do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying Uber in writing . . . . In order to be effective, [the writing] must clearly indicate Your intent to opt out of this Arbitration Provision . . . and the envelope containing the signed writing must be received (if delivered by hand) or post-marked within 30 days of the date this Agreement is executed by you. Your writing opting out of this Arbitration Provision will be filed with a copy of this Agreement and maintained by [Uber] [. . . .] Should you not opt out of this Arbitration Provision within the 30-day period, you and [Uber] shall be bound by the terms of this Arbitration Provision. You have the right to consult with counsel of your choice concerning this Arbitration Provision. You understand that You will not be subject to retaliation if you exercise your right to assert claims or opt-out of coverage under this Arbitration Provision.**

(*Id.* Ex. B § 15.3(viii); *id.* Ex. F § 15.3(viii).)  Neither of the Fridman Plaintiffs exercised his right to opt out of arbitration.  (*Id.* ¶¶ 8, 15.)  Finally, the Arbitration Provision is explicitly governed by the FAA.  (*Id.* Ex. B § 15.3(i); *id.* Ex. F § 15.3(i).)

> **D.      The Fridman Plaintiffs Agreed to Receive the Text Messages at Issue.**

When the Fridman Plaintiffs signed up to drive with Uber, they also agreed to receive text messages from Uber.  The sign-up page on which each Fridman Plaintiff entered his information, including his phone number, expressly stated:  "By proceeding, I agree that Uber or its representatives may contact me by email, phone, or SMS (including by automatic telephone dialing system) at the email address or number I provide, including for marketing purposes.  I have read and understand the relevant Driver Privacy Statement."  (Tonti Decl., Ex. A; *see also*

---

[5] The Arbitration Agreement in the August 26, 2016 TSA similarly contains a delegation clause stating that "disputes arising out of or relating to interpretation, application, enforceability or validity of this Arbitration Provision, or any portion of the Arbitration Provision . . . shall be decided by an Arbitrator and not by a court or judge." (*Id.*, Ex. F § 15.3.)

*id.*, Ex. E ["By proceeding, I agree that Uber, its affiliates, and/or representatives may contact me . . . at the phone number on file with my account, including for marketing purposes."].)

Moreover, Uber's Services Agreements contain a section titled "**Privacy**" that explains how Uber uses the personal information, including phone numbers, collected during the registration process.  (*Id.*, Ex. B § 7.1-7.2; *id.*, Ex. B § 7.1-7.3.)   The Privacy section states that Uber "may collect your personal data during the course of your [registration or application] for, and use of, the Uber Services" (*id.*, Ex. B § 7.2; *id*, Ex. F § 7.2), which includes "enable[ing] transportation providers to seek, receive, and fulfill on-demand requests for [transportation or delivery] services by [or on behalf of] Users . . ." (*Id.* Ex. B § 1.13; *id.* Ex. F §1.18)  This section further states that personal information "may be stored, processed, transferred, and accessed by [Uber] and its Affiliates . . . for business purposes, including for marketing, lead generation, service development and improvement, analytics, industry and market research, and such other purposes consistent with [Uber's] and its Affiliates' legitimate business needs.  You expressly consent to such use of personal data."  (*Id.*, Ex. B § 7.2; *id.*, Ex. F § 7.2.)

### E.    The Fridman Plaintiffs Ignored The Arbitration Provision and Filed Suit.

Plaintiffs allege that Uber violated the TCPA by sending them unsolicited text messages. (Compl. ¶ 1.)   The message allegedly sent to Michael Fridman requested information regarding the potential to "earn[] with Uber."  (*Id.* ¶ 16.)  The message allegedly sent to Reznik informed him that his "Vehicle Insurance expires in 30 days."  (*Id.* ¶ 21.)  This is precisely the type of dispute encompassed by the Arbitration Provision because the disputes relate to the Fridman Plaintiffs' agreement with Uber, including Uber's right to contact them by SMS. (Tonti Decl., Ex. B § 7.2; *id.*, Ex. F § 7.2; *id.*, Ex. A at 1; *id.* Ex. E at 1.)   Despite consenting to the Arbitration Provision and binding class action waiver, however, the Fridman Plaintiffs filed this putative class action lawsuit in violation of the Arbitration Provision.

### III.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") reflects a liberal federal policy favoring arbitration, and requires that arbitration agreements be rigorously enforced.  *See AT&T Mobility LLC v.*

6

1    *Concepcion*, 563 U.S. 333, 339 (2011) ("courts must place arbitration agreements on an equal

2    footing with other contracts"). "[T]he FAA's purpose is to give preference (instead of mere

3    equality) to arbitration provisions." *Mortensen v. Bresnan Commc'ns LLC*, 722 F.3d 1151, 1160

4    (9th Cir. 2013). "As arbitration is favored, those parties challenging the enforceability of an

5    arbitration agreement bear the burden of proving that the provision is unenforceable." *Id.* at 1157

6    (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)).

7        The FAA provides that contractual arbitration agreements "shall be valid, irrevocable, and

8    enforceable, save upon such grounds as exist at law or in equity for the revocation of any

9    contract." 9 U.S.C. § 2. A court ***must*** compel arbitration if the transaction involves interstate

10   commerce and (1) a written arbitration agreement exists; and (2) the agreement encompasses the

11   dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir.

12   2000).

13                          **A.      The FAA Governs the Agreement.**

14       Both the express terms of the Services Agreements and the nature of the relationship

15   between the parties confirm that the FAA governs the Arbitration Provision. First, the Arbitration

16   Provision provides that "[t]his Arbitration Provision is governed by the Federal Arbitration

17   Act[.]" (Tonti Decl., Ex. B § 15.3(i); *id.*, Ex. F § 15.3(i).) Second, the FAA applies to

18   agreements—like the Services Agreements here—that evidence a transaction involving interstate

19   commerce. *See* 9 U.S.C. §§ 1-2; *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274-77

20   (1995) (interpreting the FAA's "involving commerce" provision as broadly as the phrase

21   "affecting commerce"). Where, as here, the underlying transactions involve the use of Internet

22   and cellular technologies to transmit user requests across the United States, the "involving

23   commerce" requirement has been met. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175

24   (9th Cir. 2014) (applying the FAA to a dispute involving internet commerce); *United States v.

25   Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) ("the Internet is an instrumentality and channel of

26   interstate commerce" (citation omitted)).

27       Thus, the FAA clearly controls. And under the FAA, the Court should enforce the

28   Arbitration Provision.

**B.      California and Florida Law Govern Any Dispute Concerning the Enforceability Or Scope of the Arbitration Provision.**

When a "case is based on federal question jurisdiction, federal common law supplies the choice-of-law rules." *See James v. Portfolio Recovery Assocs., LLC*, No. 14-cv-03889-RMW, 2015 WL 720195, at *3 (N.D. Cal. Feb. 20, 2015).  Under federal common law, which follows section 187 of the Restatement (Second) of Conflict of Laws, "courts honor the parties' choice-of-law to govern their claims in dispute, unless: (1) 'the chosen state has no substantial relationship to the parties or the transaction' or (2) honoring the parties' choice 'would be contrary to the fundamental policy of a state that has a materially greater interest' in the dispute." *Id.* (applying the contract's choice-of-law provision to the question of who is entitled to invoke the arbitration provision).

**1.      California Law Applies to Michael Fridman's Arbitration Provision.**

California law applies to any threshold "gateway" disputes about the enforcement of the Arbitration Provision in the December 2015 TSA that Michael Fridman entered into.  Here, because the December 2015 TSA contains a Choice of Law provision that states that "the interpretation of this Agreement shall be governed by California law, without giving regard to the choice or conflicts of law provisions of any jurisdiction," (Tonti Decl., Ex. B. § 15.1), California law applies.  First, "the fact that Uber – one of the parties to the alleged contract, and the contract's drafter – is located in California weighs heavily in favor of the application of California law." *Meyer v. Kalanick*, 200 F. Supp. 3d 408, 413 (S.D.N.Y. 2016), *vacated, Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017) at 74 ("We agree with the district court's determination that California state law applies[.]").   Moreover, no state has a "materially greater interest" in the dispute.  As Plaintiffs allege, "Plaintiffs' claims arose and emanated from [California] and [] Uber maintains its primary place of business in [California]."  (Compl. ¶ 10.)  Accordingly, California law applies to the enforcement of the Arbitration Provision agreed to by Michael Fridman.

**2.      Florida Law Applies to Reznik's Arbitration Provision.**

Florida law applies to any threshold "gateway" disputes about the enforcement of the Arbitration Provision in the August 2016 TSA that Reznik entered into.  The Arbitration

8

Provision in the August 2016 TSA contains a section entitled "Governing Law; Arbitration," which states that "the interpretation of this Agreement shall be governed by the law of the state in which you perform the majority of the Delivery Services (or if you have never performed Delivery Services, the law of the state in which you reside)." (Tonti Decl., Ex. F § 15.) Although California has an interest in the lawsuit—and no state has a "materially greater" interest in the lawsuit—Florida law applies under the choice of law clause because Reznik resides in Florida (Compl. ¶ 5.), and none of the grounds for applying a different state's law apply here.[6] *See also Pulte Home Corp. v. Ply Gem Indus., Inc.*, 804 F. Supp. 1471, 1481 (M.D. Fla 1992) ("It is well settled that absent a public policy prohibition, Florida will uphold an express choice of law provision in a contract.")

### C.   The Arbitration Provision Is Valid and Must Be Enforced.

#### 1.   The Fridman Plaintiffs Agreed to Arbitrate "Gateway" Arbitrability Issues.

Any "gateway" challenges to the validity of the Arbitration Provision or its applicability to the Fridman Plaintiffs' claims must be delegated to, and decided by, an arbitrator.

The FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement, consistent with the principle that arbitration is a matter of contract. 9 U.S.C. § 4. When parties "clearly and unmistakably" demonstrate their intent to have the arbitrator decide arbitrability, those issues must be referred to the arbitrator. *Oracle Am., Inc. v. Myriad Grp., A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013); *see Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130-32 (9th Cir. 2015) ("[A] court must enforce an agreement that, as here, clearly and unmistakably delegates arbitrability questions to the arbitrator. . . ."); *accord Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249,

---

[6] Even if this Court applied California law to interpret Reznik's Arbitration Provision, for the reasons discussed in connection with Michael Fridman's arbitration agreement, California law would also require the Court to compel Reznik's claims to arbitration.

1   262-63 (5th Cir. 2014) (if the parties have delegated questions of arbitrability to the arbitrator,

2   "whether the Plaintiffs' claims are subject to arbitration must be decided in the first instance by

3   the arbitrator, not a court."); *Suarez, v. Uber Techs., Inc.*, No. 8:16-cv-166-T-30MAP, 2016 WL

4   2348706, at *5 (M.D. Fla. May 4, 2016) (enforcing an **identical** delegation clause and granting

5   Uber's motion to compel arbitration); *Shea v. BBVA Compass Bancshares, Inc.*, No. 1:12-cv-

6   23324-KMM, 2013 WL 869526, at *4 (S.D. Fla. Mar. 7, 2013) (enforcing delegation clause and

7   holding that "Plaintiff's claim concerning the arbitrability of the TCPA claim should be addressed

8   by an arbitrator instead of this Court").

9           Here, the parties "clearly and unmistakably" delegated the gateway issue of arbitrability to

10  the arbitrator by incorporating the JAMS Streamlined Arbitration Rules & Procedures.  (Tonti

11  Decl., Ex. B § 15.3(iii); *id.*, Ex. F § 15.3(iii).)  This language in the Arbitration Provision is "clear

12  and unmistakable" evidence that the parties agreed to delegate gateway questions of arbitrability

13  to the arbitrator.  Indeed, in *Brennan*, the Ninth Circuit held that an incorporation-by-reference of

14  AAA rules "constitutes clear and unmistakable evidence that contracting parties agreed to

15  arbitrate arbitrability."  796 F.3d at 1130 (incorporation of AAA rules); *see also Oracle Am.*

16  *Inc. v. Myriad Grp., A.G.*, 724 F.3d 1069, 1074-75 (AAA rules).  The same rule applies to

17  agreements that incorporate JAMS rules.  *See Shierkatz RLLP v. Square, Inc.*, No. 15-cv-02202-

18  JST, 2015 WL 9258082, at *6 (N.D. Cal. Dec. 17, 2015) (JAMS rules); *Zelkind v. Flywheel*

19  *Networks, Inc.*, No. 15-cv-03375-WHO, 2015 WL 9994623, at *3 (N.D. Cal. Oct. 16, 2015)

20  (JAMS rules).[7]

21          Numerous federal courts around the country have held that similar provisions in Uber's

22  agreements—including ones that delegated to the arbitrator the authority to decide the

23

_____

24          [7] The Arbitration Provision provides that the parties may choose a JAMS arbitrator and, if
    they do, the JAMS rules apply.  (Tonti Decl., Ex. B § 15.3(iii); *id.*, Ex. F § 15.3(iii).)  Under
25  JAMS rule 11(b), the Arbitrator decides arbitrability:  "Jurisdictional and arbitrability disputes,
    including disputes over the formation, existence, validity, interpretation or scope of the agreement
26  under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be
    submitted to and ruled on by the Arbitrator.  *The Arbitrator has the authority to determine*
27  *jurisdiction and arbitrability issues as a preliminary matter*."  *See* JAMS Comprehensive
    Arbitration Rules & Procedures, rule 11(b), https://www.jamsadr.com/rules-comprehensive-
28  arbitration/#Rule 11 (emphasis added) (last visited July 18, 2018).

1   "enforceability, revocability or validity" of the arbitration provision—constituted  a "clear and

2   unmistakable" intent to arbitrate arbitrability "under all circumstances."  *Mohamed v. Uber*

3   *Techs., Inc.*, 848 F.3d at 1207-1209.  In each of these cases, the court enforced the arbitration

4   provisions and granted Uber's motions to compel arbitration.  *See, e.g.*, *Suarez*, 2016 WL

5   2348706, at *5 ("The parties entered into valid and enforceable agreements to arbitrate questions

6   of arbitrability."); *Richemond*, 263 F. Supp. 3d at 1318; *Micheletti*, 213 F. Supp. At 846-47

7   (following *Mohamed's* reasoning and holding that delegation provision is valid); *Sena*, 2016 WL

8   1376445, at *8 ("The Court must compel Sena to submit to arbitration because the parties entered

9   into a valid and enforceable agreement to arbitrate questions of arbitrability."); *Varon*, 2016 WL

10  1752835, at *6 ("[T]he Court finds that [the] delegation clause is a valid and enforceable

11  agreement that was clearly and unmistakably communicated and is neither procedurally nor

12  substantively unconscionable."); *Bruster*, 188 F. Supp. At 664 ("[The] delegation provision

13  delegates issues of arbitrability to the arbitrator, not the Court."); *Lee*, 208 F. Supp. at 891 ("the

14  plain language of the clause makes evident that the 'validity of the Arbitration Provision . . . shall

15  be decided by an Arbitrator and not by a court or judge.'")

16      Under this well-settled precedent, the Fridman Plaintiffs therefore must submit any

17  threshold issues of arbitrability to the arbitrator in the first instance.

18          **2.      Even if the Court Finds That It, Rather Than the Arbitrator,
                     Should Decide Arbitrability, Both Elements Are Satisfied.**
19

20      Even if the Court does not enforce the delegation clause—and it should—the Court should

21  nonetheless compel arbitration.  In determining whether an agreement to arbitrate exists, the

22  Court's role under the FAA is limited to determining (1) whether there is a valid agreement to

23  arbitrate between the parties; and (2) whether the agreement covers the dispute.  *PacifiCare*

24  *Health Sys., Inc. v. Book*, 538 U.S. 401, 407 n.2 (2003); *Howsam v. Dean Witter Reynolds, Inc.*,

25  537 U.S. 79, 83-84 (2002).  In conducting these inquiries, "as a matter of federal law, any doubts

26  concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H.*

27  *Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  Both requirements are

28  satisfied here.

sf-3916410

### a. The Fridman Plaintiffs Entered Into Valid Agreements to Arbitrate.

General contract law principles apply to the interpretation and enforcement of the Arbitration Provision. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The first issue is whether the parties entered into the Arbitration Provision, which was contained within the Services Agreements. Clearly, they did.

There can be no dispute that under California law, both Plaintiffs entered into a binding contract to arbitrate when they each clicked twice to affirmatively agree to the Services Agreements hyperlinked on their registration screens. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d at 1173-79 (holding that mutual assent is established by "reasonable notice" of the terms of service through a hyperlinked alert); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012) (enforcing hyperlinked Terms because internet users understand that the hyperlinked phrase "Terms of Use" prompts the consumer "to examine terms of sale that are located somewhere else"); *accord In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1166 (N.D. Cal. 2016) (choice-of-law clause that was part of defendant's online TOS held enforceable where plaintiffs "had to click a box separately affirming that they had read and agreed to the Terms of Use"). Indeed, numerous courts addressing the enforceability of similar internet agreements have reached the same conclusion.[8] Michael Fridman thus concedes—as he must—that "[a]s part of becoming an Uber driver, Fridman entered into a licensing agreement with Uber . . . ." (Compl. ¶ 13.) Although he claims that "Uber unilaterally deactivated [him] as an Uber driver" thereby "terminating the agreement," the Arbitration Provision expressly **survives**

---

[8] *See, e.g., Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1257 (10th Cir. 2012) (holding clickwrap assent enforceable in internet service contract where customers click on an "I Acknowledge" button on the same web page that has a hyperlink to defendant's terms of service); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 907 (N.D. Cal. 2011) (user agreed to arbitration provision because she was told that, "By using YoVille, you also agree to the YoVille [blue hyperlink] Terms of Service" and the user proceeded); *Starke v. Gilt Groupe, Inc.*, No. 13 Civ. 5497(LLS), 2014 WL 1652225, at *1 (S.D.N.Y. Apr. 24, 2014); *Crawford v. Beachbody, LLC*, No. 14cv1583-GPC(KSC), 2014 WL 6606563, at *1 (S.D. Cal. Nov. 5, 2014); *5381 Partners LLC v. Shareasale.com, Inc.*, No. 12-CV-4263 (JFB)(AKT), 2013 WL 5328324, at *1 (E.D.N.Y. Sept. 23, 2013); *Fteja*, 841 F. Supp. 2d at 831; *Sherman v. AT&T Inc.*, No. 11 C 5857, 2012 WL 1021823, at *3 (N.D. Ill. Mar. 26, 2012); *Snap-on Bus. Sols. Inc. v. O'Neil & Assocs., Inc.*, 708 F. Supp. 2d 669, 673 (N.D. Ohio 2010); *Druyan v. Jagger*, 508 F. Supp. 2d 228, 232 (S.D.N.Y. 2007).

sf-3916410

1   termination.  (*See* Tonti Decl., Ex. B § 15.3(i) ["This Arbitration Provision . . . survives after the

2   Agreement terminates.]; *id.* Ex. F § 15.3(i) (same).)

3         Second, Reznik entered into a binding agreement to arbitrate his claims under Florida law.

4   Under Florida law, a valid, binding contract is formed where there is: "offer, acceptance,

5   consideration and sufficient specification of essential terms."  *Schoendorf v. Toyota of Orlando*,

6   No. 6:08–cv–767–Orl–19DAB, 2009 WL 1075991, at *6 (M.D. Fla. Apr. 21, 2009) (quoting

7   *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004)).  Further, "a party may manifest assent

8   to an agreement to arbitrate by failing to opt out of the agreement within a specified time."

9   *Dorward v. Macy's Inc.*, No. 2:10-cv-669-FtM-29DNF, 2011 WL 2829118, at *10 (M.D. Fla.

10  July 20, 2011).

11        Here, Reznik voluntarily entered into a written mutual agreement to arbitrate any disputes,

12  as evidenced by his acceptance of the Services Agreement and his failure to exercise his

13  opportunity to timely opt-out of the arbitration provision.  Indeed, to use the Uber App, Reznik

14  had to click "Yes, I agree" to the Services Agreement.  (Flanagan Decl. ¶ 7; *id.* Ex. A.)  After

15  clicking "Yes, I agree" on July 7, 2017, Reznik was asked to confirm his acceptance ***a second***

16  ***time*** by clicking again on "Yes, I agree" to indicate his confirmation.  (*Id.* ¶ 9; *id.* Ex. B.)  After

17  accepting twice, a copy of the Agreement was automatically transmitted to Reznik's Driver Portal

18  in the Uber App, where he could review the Agreement at his leisure, either online on any device

19  or by printing a copy.  (*Id.* ¶ 7.)  This is more than sufficient to establish Reznik's acceptance of

20  the Arbitration Provision.  *See Dorward,* 2011 WL 2829118, at *10 ("By declining to opt out in

21  accordance with the terms of the offer, plaintiff accepted defendant's offer to resolve any disputes

22  through arbitration."); *McAdoo v. New Line Transp., LLC*, Case No. 8:16-cv-1917-T-27AEP,

23  2017 WL 942114, at *2 (M.D. Fla. Mar. 9, 2017) ("Plaintiffs accepted the offer by signing the

24  agreement, and consideration existed in the form of a 'mutual obligation to arbitrate.'") (citation

25  omitted); *see also Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011)

26  (enforcing forum selection clause in online agreement and noting that "[i]n Florida and the

27  federal circuits ... clickwrap agreements are valid and enforceable contracts." (citation omitted)).

28  Although Reznik claims that "Uber rejected and/or denied his application" purportedly

13

1  "terminating the agreement," the Arbitration Provision expressly *survives* termination.  (Tonti

2  Decl., Ex. F § 15.3(i).)

3         b.       **The Fridman Plaintiffs' Claims Fall Squarely Within the Scope of the Arbitration Provision.**

4

5         The FAA requires that courts compel arbitration "unless it may be said with *positive*

6  *assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted

7  dispute."  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (emphasis

8  added) (citation omitted).  Any doubts should be resolved in favor of coverage.  *Id.*

9         The Arbitration Provision broadly defines the scope of arbitrable disputes, and covers "all

10  disputes between You and [Uber] . . . including but not limited to any disputes arising out of or

11  related to this Agreement and disputes arising out of or related to your relationship with Uber. . .

12  ."  (*See* Tonti Decl., Ex. B § 15.3(i); *id.*, Ex. F § 15.3 (i).)  The Arbitration Provision's use of the

13  "arising out of or relating to" language should be interpreted broadly.  *See Simula, Inc. v. Autoliv,*

14  *Inc.*, 175 F.3d 716, 721 (9th Cir. 1999);  *Delgado v. Progress Fin. Co.*, No. 1:14-cv-00033-LJO-

15  MJS, 2014 WL 1756282, at *5 (E.D. Cal. May 1, 2014) ("The use of the 'relat[ing] to' language

16  is a signal that the scope of the agreement is broad under Ninth Circuit case law and encompasses

17  claims beyond the four corners of the contract."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*,

18  No. 07-1827 SI, 2011 WL 2650689, at *5 (N.D. Cal. July 6, 2011).  In the face of this language,

19  the "Plaintiff's claims need only 'touch matters' covered by the contract containing the arbitration

20  provision."  *Koyoc v. Progress Fin. Co.*, No. CV 13-09165-RSWL (AGRx), 2014 WL 1878903,

21  at *4 (C.D. Cal. May 9, 2014) (citation omitted).

22         Here, the Fridman Plaintiffs' claims fall squarely within the scope of the Arbitration

23  Provision, which encompasses "all disputes between You and [Uber]," including "disputes arising

24  out of or related to your relationship with Uber."  During the course of the Fridman Plaintiffs'

25  sign-up process, each agreed that "[b]y proceeding, I agree that Uber or its representatives may

26  contact me by email, phone, or SMS . . . at the email address or number I provide, including for

27  marketing purposes."  (Tonti Decl., Ex. A; *see also id.*, Ex. E ("By proceeding, I agree that Uber,

28  its affiliates, and/or representatives may contact me . . . at the phone number on file with my

14

sf-3916410

account, including for marketing purposes.").)  Each Plaintiff affirmatively agreed and proceeded

with the sign-up process.  (*Id.* ¶¶ 3-6, 10-13.)  Pursuant to this agreement between Uber and each

Fridman Plaintiff, Fridman and Reznick consented to receiving "SMS" text messages from Uber

at the phone numbers that each of them voluntarily provided to Uber ⸺ including the texts at

issue here.  Although the Fridman Plaintiffs may deny that they provided this consent to Uber, the

interpretation of this express agreement between the parties clearly falls within the scope of the

Arbitration Provision covering "all disputes" between the parties, including this dispute related to

each Plaintiff's agreement to receive the text messages at issue.

Moreover, the Fridman Plaintiffs' claims not only "touch matters" covered by the Services

Agreements, they fall squarely within those Agreements.  The alleged text messages regarding

vehicle insurance (Compl. ¶ 21) fall under Uber's "legitimate business need" to ensure that

potential drivers have insurance.  Similarly, communications about the potential to "earn[] with

Uber" (*Id.* ¶ 16) is related to Uber's "business purpose" of communicating about the use of the

Uber Driver App.  These messages are therefore permitted under the Services Agreements, which

provide that Uber "may collect your personal data during the course of your [registration or

application] for [Uber] . . . for business purposes, including for marketing, lead generation,

service development and improvement, analytics, industry and market research and such purposes

consistent with [Uber's] and its Affiliates' legitimate business needs."  (*See* Tonti Decl., Ex. B §

7.2; *id.*, Ex. F § 7.2.)

Courts have repeatedly held that where, as here, TCPA claims are intertwined with the

underlying contract, such claims fall within arbitration provisions that include broad "arising out

of or relating to" language.  *See Koyoc v. Progress Fin. Co.*, 2014 WL 1878903, at *6 (rejecting

plaintiff's argument that TCPA claim was independent from the contract because it necessarily

required contract interpretation to determine whether the claim was within scope); *Fisher v. Rent-*

*A-Center, Inc.*, No. 14-cv-00918-MCE-AC, 2014 WL 3729553, at *4-5 (E.D. Cal. July 24, 2014)

(compelling arbitration of TCPA claim based on communications regarding payments on

furniture rental contract); *Sherman v. RMH, LLC*, No. 13cv1986-WQH-WMc, 2014 WL 30318,

at *8-9 (S.D. Cal. Jan. 2, 2014) (compelling arbitration of TCPA claim based on telephone call

15

about status review of prior vehicle purchase through an installment sale contract).  A key issue in this case is whether all of the Plaintiffs consented to receiving the alleged text messages related to driving with Uber (*see, e.g.*, Compl. ¶ 34(d)), including through affirmatively agreeing to receive these texts during the sign-up process to drive with Uber.  *See Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017) ("The district court correctly stated that prior express consent is a complete defense to Van Patten's TCPA claim.")  Because the Fridman Plaintiffs' TCPA claims are intertwined with the underlying contract and relationship between the parties, and clearly "touch matters" that will need to be resolved by the arbitrator, the Arbitration Provision encompasses the Fridman Plaintiffs' TCPA claims.

### 3.   The Arbitration Provision Is Neither Procedurally Nor Substantively Unconscionable.

Although the arbitrator should resolve any unconscionability challenge to the Arbitration Agreement under the delegation clause, the Fridman Plaintiffs cannot rely on any such arguments to avoid arbitration here.  "The party resisting arbitration bears the burden of proving unconscionability."  *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 247 (2012).  "[P]rocedural and substantive unconscionability must *both* be present" to permit a court "to refuse to enforce a contract."  *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015) (internal citation omitted); *see also Suarez*, 2016 WL 2348706, at *4 (to find a contract unconscionable, the court "must find that it is *both* procedurally and substantively unconscionable" (quoting *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 283-84 (Fla. 1st Dist. Ct. App. 2003)) (same).  The former "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise."  *Pinnacle,* 55 Cal. 4th at 236, 246; *Suarez*, 2016 WL 2348706, at *4 ("The test for procedural unconscionability examines the manner in which the contract was entered . . . .").  The latter relates to "the fairness of the agreement's actual terms and to assessments of whether they are overly harsh or one-sided."  *Pinnacle,* 55 Cal. 4th at 236, 246; *see also Suarez*, 2016 WL 2348706, at 910 (citation omitted) ("The substantive component focuses on . . . whether th[e] terms [of the agreement] are unreasonable and unfair.").  Plaintiff can show neither.

First, the Arbitration Provision is not procedurally unconscionable because Plaintiffs "had the absolute right to opt out of the Arbitration Provision." *Suarez*, 2016 WL 2348706, at *4 ("[B]ecause Plaintiffs were not required to accept the Arbitration Provision, there can be no finding of procedural unconscionability."); *Mohamed*, 848 F.3d at 1210 (holding that there was "a meaningful right to opt-out," which rendered the delegation provision "procedurally conscionable as a matter of law." (citation omitted)). Here, Plaintiffs had the right to opt out of Uber's Arbitration Provision. (Tonti Decl., Ex. B at 1; *id.*, Ex. F at 1.). Moreover, Drivers do, in fact, opt out of Uber's arbitration provisions. (*Id.* ¶ 15.) Plaintiffs, however, did not. (*Id.* ¶¶ 8, 15.)

Second, because Uber's Arbitration Provision is not procedurally unconscionable, this Court need not reach the question of substantive unconscionability. *See Kilgore v. Key Bank, Nat. Ass'n*, 718 F.3d 1053, 1063 (9th Cir. 2013) ("A contract provision is unenforceable under California law [only] if it is both procedurally and substantively unconscionable."); *see also Suarez*, 2016 WL 2348706, at *4 (finding a contract unenforceable under Florida law only if it is both procedurally and substantively unconscionable). But even if the Court were to consider substantive unconscionability, it should find that nothing in the arbitration provision is substantively unconscionable. Indeed, courts across the country that have addressed this issue have found that Uber's arbitration provisions ***are not*** substantively unconscionable. *See, e.g.*, *Suarez*, 2016 WL 2348706, at *5; *Rimel v. Uber Techs., Inc.*, No. 6:15-cv-2191-Orl-41KRS, 2016 WL 6246812, at *6 (M.D. Fla. Aug. 4, 2016); *Varon*, 2016 WL 1752835, at *6 ("[T]he Court finds that [the] delegation clause is a valid and enforceable agreement that was clearly and unmistakably communicated and is neither procedurally nor substantively unconscionable."). The same is true here.

### D.     Plaintiffs Must Arbitrate Their Claims On An Individual Basis.

By its express terms, the Arbitration Agreement does not permit class actions or class arbitration. (*See* Tonti Decl., Ex. B § 15.3; *id.* Ex. F § 15.3.) This class action waiver is enforceable under well-established precedent from the United States Supreme Court, which has emphasized that the FAA preempts any attempts to invalidate such provisions under state law. *See DIRECTV, Inc. v. Imburgia* 136 S. Ct. 463, 471 (2015) (holding that the FAA preempts any

17

1   attempt to invalidate arbitration agreement with class action waiver under California law); *see*

2   *also Epic. Syst. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018) ("[B]y attacking . . . the

3   individualized nature of the arbitration proceedings, the employees' argument seeks to interfere

4   with one of arbitration's fundamental attributes."); *Concepcion*, 563 U.S. at 352 (FAA preempts

5   California's judicial rule regarding the unconscionability of class arbitration waivers);

6   *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014)

7   ("Johnmohammadi can't argue that the class-action waiver is unenforceable under California

8   law."); *accord Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 359-60 (2014) (enforcing

9   class waiver and finding California law to the contrary is preempted by the FAA).

10       Accordingly, this Court should enforce the class action waiver and compel Plaintiff to

11   arbitrate his claims on an individual basis.

12       **E.    This Action—Including Lechner's Claims—Should Be Stayed Pending**
          **Completion of the Fridman Plaintiffs' Individual Arbitrations.**
13

14       The FAA favors arbitration.  *Jasso v. Money Mart Express, Inc.*, 879 F. Supp. 2d 1038,

15   1042 (N.D. Cal. 2012).  Moreover, the FAA "mandates that district courts *shall* direct the parties

16   to proceed to arbitration on issues as to which an arbitration agreement has been signed."

17   *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991) (emphasis in

18   original).  Consequently, section 3 of the FAA empowers courts to stay "***the action*** until such

19   arbitration has been had in accordance with the terms of the agreement [.]"  9 U.S.C. § 3

20   (emphasis added).

21       **1.    This Action Should Be Stayed As to Fridman and Reznik.**

22       Here, because Fridman and Reznik must arbitrate their claims or pursue them in small

23   claims court, this action should be stayed pending any further proceedings pursuant to the FAA.

24   *See* 9 U.S.C. §§ 3, 9-11; *Amirhamzeh v. Wells Fargo Bank, N.A.*, No. 14-CV-02123-VC, 2014

25   WL 12610227, at *2 (N.D. Cal. Oct. 31, 2014) (staying case after concluding that the plaintiff

26   must be compelled to arbitrate her claims).

27       **2.    Lechner's Identical TCPA Claim Also Should Be Stayed.**

28       Because the FAA's mandate to stay ***the action*** applies to non-arbitrable claimants,

18

1    Lechner's sole claim under the TCPA also should be stayed.  As the United States Supreme Court

2    has held, "[u]nder the Arbitration Act, an arbitration agreement must be enforced notwithstanding

3    the presence of other persons who are parties to the underlying dispute but not to the arbitration

4    agreement."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983).

5    Thus, if the arbitrable claims are referred to arbitration, "it may be advisable to stay litigation

6    ***among the non-arbitrating parties*** pending the outcome of the arbitration."  *Id.* at 20 n.23

7    (emphasis added); *see also Wolf v. Langemeier*, No. 2:09-CV-03086-GEB-EFB, 2010 WL

8    3341823, at *8-9 (E.D. Cal. Aug. 24, 2010) (staying claims of non-arbitrating plaintiffs and

9    finding that the interests of economy and efficiency favored a stay in light of the similarity of the

10   issues of law and fact and the possibility of inconsistent rulings); *Bischoff v. DirecTV, Inc.*, 180 F.

11   Supp. 2d 1097, 1114-15 (C.D. Cal. 2002) (staying the claims of plaintiffs not subject to the

12   arbitration provision in light of "the similarity of the issues of law and fact in this case to those

13   that will be considered during arbitration, as well as the potential for inconsistent findings absent

14   a stay").  *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 298 F. Supp. 3d

15   1285, 1304 (N.D. Cal. 2018) ("A stay of all claims is particularly warranted in the class-action

16   context because the complaint admits that common questions of fact and law predominate.").

17         In deciding whether to stay the claims of a party that did not agree to arbitration, a court

18   must give preference to preserving the arbitration rights of the signatories to the arbitration

19   agreement over the non-signatories' interests in a speedy resolution.  *See Hill v. G E Power Sys.,*

20   *Inc.*, 282 F.3d 343, 347-48 (5th Cir. 2002); *see also id.* (courts must take into account whether

21   proceeding with the litigation might impair an arbitrator's consideration of the arbitrable claims);

22   *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997) (affirming stay where one

23   plaintiff's claims were arbitrable and the other plaintiff's claims were not because failure to stay

24   the action would result in "substantial prejudice" as continuing litigation "would involve

25   significant expense and inconvenience and that might adversely affect the outcome of [the]

26   arbitration").

27         Here, the relevant factors warrant a stay of Lechner's claims pending the resolution of the

28   Fridman Plaintiffs' individual arbitrations.  Lechner—like the Fridman Plaintiffs—asserts a single

19

Defs.' Mot. to Compel Arbitration and for Stay
Case No. 4:18-cv-02815-HSG

sf-3916410

claim under the TCPA based on an alleged practice of "sending unauthorized and unwanted text messages" (Compl., at 1) purportedly related to using the Uber Driver App that is identical to the allegations asserted by the Fridman Plaintiffs.  (Compl. ¶¶ 26-27.)  And Plaintiffs contend that there are "many questions of law and fact common to the claims of Plaintiffs."  (Compl. ¶ 34.)  Accordingly, it is in the interests of economy and efficiency to stay Lechner's claims while the Fridman Plaintiffs arbitrate individually.  *See Wolf*, 2010 WL 3341823, at *8-9 (staying the entire claim, including the claims of the non-arbitrating plaintiffs, pending arbitration of the other plaintiffs' arbitrations).   Indeed, proceeding in both forums will require the parties to incur significant expenses that could be avoided by proceeding first with arbitration.  Further, staying Lechner's claims is necessary to avoid inconsistent findings—particularly regarding the consent provided by drivers—which could impair the arbitrator's consideration of the Fridman Plaintiffs' claims.  Having the arbitrator decide these issues not only avoids inconsistent outcomes, it also informs the court's subsequent disposition of any non-arbitrable claims.  Accordingly, under the FAA's "arbitration first" rule—as interpreted by the Supreme Court in *Moses H. Cone* and its progeny—this Court should stay Lechner's claims.

## IV.    CONCLUSION

The Court should order Plaintiffs Michael Fridman and Danny Gesel Reznik Fridman to arbitrate all of their claims against Uber and stay this action, including Jake Lechner's claims, pending the outcome of arbitration.

Dated: July 27, 2018

TIFFANY CHEUNG
ADAM J. HUNT, *pro hac vice*
LUCIA X. ROIBAL
MORRISON & FOERSTER LLP


By:   */s/ Tiffany Cheung*
　　　TIFFANY CHEUNG

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and
RASIER, LLC