David S. Ratner, Esq. (SBN 316267)
David Ratner Law Firm, LLP
david@davidratnerlawfirm.com
33 Julianne Court
Walnut Creek, CA 94595
Telephone: (917) 900-2868
Fax: (925) 891-3818
*Attorney for Plaintiffs and the Class*

[Additional counsel appearing on signature page]

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MICHAEL FRIDMAN, DANNY GESEL REZNIK FRIDMAN**, and **JAKE LECHNER**, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>**UBER TECHNOLOGIES, INC.**, a Delaware corporation, **RASIER, LLC**, a Delaware limited liability company, and **PORTIER, LLC**, a Delaware limited liability company,<br><br>*Defendants.* | Case No. 4:18-cv-02815-HSG<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Michael Fridman ("Fridman"), Danny Gesel Reznik Fridman ("Reznik"), and Jake Lechner ("Lechner"; together with Fridman and Reznik: "Plaintiffs") bring this class action under the Telephone Consumer Protection Act against Uber Technologies, Inc., Rasier, LLC, and Portier, LLC (collectively "Uber" or "Defendant"), to stop its practice of sending unauthorized and unwanted text messages, and to obtain redress for all persons similarly injured by its conduct. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including

investigation conducted by their attorneys.

## NATURE OF THE ACTION

1. This case challenges Defendant Uber's practice of sending unsolicited text messages to (1) former Uber drivers that Uber has terminated, (2) former applicants to become Uber drivers that Uber has rejected, and (3) other consumers that have never been or applied to become Uber drivers and/or have not otherwise had any relationship with Uber.

2. Uber's unsolicited texts violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, and caused Plaintiffs and putative members of the Class to suffer actual harm, including the aggravation, nuisance, loss of time, and invasions of privacy that result from the receipt of such text messages, lost value of cellular services paid for, and a loss of the use and enjoyment of their phones, including wear and tear to their phones' data, memory, software, hardware, and battery components, among other harms.

3. Accordingly, Plaintiffs seeks an injunction requiring Uber to cease sending unsolicited text messages to terminated drivers, rejected applicants, and other consumers from whom Uber does not have consent, as well as an award of actual and/or statutory damages and costs.

## PARTIES

4. Plaintiff Michael Fridman is a Florida resident who Uber terminated as an Uber driver in or around January 2018.

5. Plaintiff Danny Gesel Reznik Fridman is a Florida resident whose application become an Uber driver Uber rejected in or around July 2017.

6. Plaintiff Jake Lechner is a Michigan resident that has never been or applied to become an Uber driver.

7. Defendant Uber Technologies, Inc. is a Delaware corporation headquartered in San Francisco, California.

8. Defendant Rasier, LLC is a Delaware limited liability company headquartered in

San Francisco, California.

9. Defendant Portier, LLC is a Delaware limited liability company headquartered in San Francisco, California.

**JURISDICTION & VENUE**

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1367 as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

11. The Court has personal jurisdiction over Defendant and venue is proper in this District because Uber's unauthorized texts giving rise to Plaintiffs' claims arose and emanated from this District, and because Uber maintains its primary place of business in this District.

**FACTUAL ALLEGATIONS**

12. Uber is a multinational company that offers on-demand lead generation, payment processing, and related services to transportation providers (i.e., Uber and Uber Eats drivers) for a fee.[1]

13. In order to drum up business from transportation providers, Uber sends unsolicited text messages to consumers that either Uber terminated as drivers, had applications to become drivers denied by Uber, or never were or applied to become Uber drivers. As part of these marketing efforts, Uber also sends unsolicited text messages to consumers that have never

---

[1] *See, e.g.*, Software License and Online Services Agreement dated June 21, 2014 at §§ 1, 4.4 (available at: https://uber-regulatory-documents.s3.amazonaws.com/country/united_states/p2p/ Partner %20Agreement%20November%2010%202014.pdf (last accessed Apr. 26, 2018)). *See also* Uber agreement in effect after April 3, 2015, defining providers of transportation services to be Uber's "Customers" (available at: https://uber-regulatory-documents.s3.amazonaws.com/ country/united_states/licensed/Transportation%20Company%20Agreement%20April%207%202 015.pdf (last accessed Apr. 26, 2018)).

FIRST AMENDED CLASS ACTION COMPLAINT
-3-

had any relationship with Uber.

**Plaintiff Fridman**

14. In June 2014, Fridman applied to become an Uber driver. As part of becoming an Uber driver, Fridman entered into a licensing agreement with Uber specifying the fees payable by Fridman for use of the "Uber Services" and permitting Uber to unilaterally terminate the parties' relationship at any time.[2]

15. As an Uber driver, Fridman necessarily used, and paid Uber for using, the Uber Services. For example, between May 15 and May 22, 2016, Fridman used the Uber Services 23 times and paid "Uber Fees" totaling $57.80 for doing so.

16. On or about January 30, 2018, Uber unilaterally deactivated Fridman as an Uber driver, terminating the agreement and relationship between Uber and Fridman.[3]

---

[2] *See* Software License and Online Services Agreement dated June 21, 2014 at § 12. *See also* Uber's driver agreement in effect until June 21, 2014, providing for automatic termination in the event that a driver failed to use the Uber Services for 180 days, as Plaintiff did prior to Uber terminating its agreement and relationship with him (available at: http://webcache.google usercontent.com/ search?q=cache:BDJP0clHHMQJ:hostcarsla.com/Software%2520License %2520and%2520Online%2520Services%2520Agreement.pdf+&cd=22&hl=en&ct=clnk&gl=us (last accessed Apr. 26, 2018)).

[3] *See* Ricotta & Marks, P.C., *Wrongfully Terminated from Uber or Lyft? Know Your Rights* (available at: http://www.queensemploymentattorney.com/blog/2017/12/uber-lyft-driver-termination-rights/ (last accessed Apr. 26, 2018)) ("For Uber drivers, terminations are known as 'deactivations.' This is because when a driver is fired, his or her account is deactivated. Drivers must comply with certain rules to avoid deactivation, such as: Owning and using a vehicle that meets Uber's vehicle requirements; Pass a background check; Pass a driving record check; Have a valid in-state driver's license; Be up to date with vehicle insurance and registration; and

17. Notwithstanding, months later, on April 12, 2018 at 3:50 pm, after terminating its relationship with Fridman, Uber sent Fridman a text message from telephone number (843) 485-0796 to his cellular telephone number without his consent, soliciting him to reengage as an Uber driver and start using the Uber Services, and paying Uber Fees to Uber for their use, again:

> Uber: Hi Michael, I'm your dedicated driver account specialist. Are you still interested in earning with Uber? I can help! Reply YES to chat

18. And even after bringing suit against Defendant for violation of the TCPA, Fridman has continued to receive unsolicited text messages from Defendant.

19. Uber's unsolicited text was a nuisance that aggravated Fridman, wasted his time, invaded his privacy, diminished the value of the cellular services he paid for, caused him to temporarily lose the use and enjoyment of his phone, and caused wear and tear to his phone's data, memory, software, hardware, and battery components.

20. On information and belief, Uber, or a third-party acting on its behalf, has sent substantively identical unsolicited text messages *en masse* to the cellular telephone numbers of other former Uber drivers nationwide that, at the time the text messages were sent, had been terminated by, and no longer had any agreement or relationship with, Uber. Uber, or a third-party acting on its behalf, also sent substantively identical texts to the cellular telephone numbers of other consumers that have never been Uber drivers. To the extent the text messages were sent on Uber's behalf to former Uber drivers and other consumers, Uber provided the third-party

---

Have in-state automobile insurance with the driver's name on the policy. … Terminating a driver for failing to comply with one of the requirements listed above is perfectly acceptable.").

access to former drivers' records, authorized use of its trade name, otherwise controlled the content of the messages, and knew of, but failed to stop, the sending of the text messages in violation of the TCPA.

21.   In sending the unsolicited text messages at issue, Uber, or a third party acting on its behalf, utilized an automatic telephone dialing system; hardware and/or software with the capacity to store or produce cellular telephone number to be called, using a random or sequential number generator.  This is evident from the circumstances surrounding the text messages, including the ability to trigger an automated response by replying "YES," their commercial and generic content, that substantively identical texts were sent to multiple recipients, and that they were sent from a telephone number associated with a landline, which is consistent with the use of an automatic telephone dialing system to send text messages.[4]

**Plaintiff Reznik**

22.   In July 2017, Reznik applied to become an Uber Eats driver, but Uber rejected and/or denied his application, terminating any prospective agreement or relationship between Reznik and Uber.

23.   Notwithstanding, months later, on April 21, 2018 at 4:05 pm, Uber sent Reznik a text message from telephone number (408) 775-7154 to his cellular telephone number without his

> Uber: Danny, your Vehicle Insurance expires in 30 days. Once you get a new version of your document you can upload it here http://t.uber.com/expiry to keep your account active. Thanks!

---

[4] Open Caller Listings, Listing Information for 843-485-0796 (available at: http://opencallerlistings.com/listing/843-485-0796 (last accessed Apr. 26, 2018)).

consent, with a message intended exclusively for active Uber drivers:

24. Weeks later, on May 14, 2018 at 4:06 pm – the day after this action was filed – Uber sent Reznik a nearly identical text message from telephone number (669) 248-8113 intended

> Uber: Danny, your Vehicle Insurance expires in 7 days. Upload the latest version as soon as possible at http://t.uber.com/expiry to keep your Uber partner account active. Thanks!

exclusively for active Uber drivers:

25. Uber's unsolicited texts were a nuisance that aggravated Reznik, wasted his time, invaded his privacy, diminished the value of the cellular services he paid for, caused him to temporarily lose the use and enjoyment of his phone, and caused wear and tear to his phone's data, memory, software, hardware, and battery components.

26. On information and belief, Uber, or a third-party acting on its behalf, has sent substantively identical unsolicited text messages *en masse* to the cellular telephone numbers of other consumers nationwide whose applications to become Uber drivers Uber rejected and/or denied, and who never had any subsequent agreement or relationship with Uber.  Uber, or a third-party acting on its behalf, also sent substantively identical texts to the cellular telephone numbers of other consumers that have never applied to become Uber drivers.  To the extent the text messages were sent on Uber's behalf to applicants that Uber rejected and/or denied and other consumers, Uber provided the third-party access to the applicants' records, authorized use of its trade name, otherwise controlled the content of the messages, and knew of, but failed to stop, the sending of the text messages in violation of the TCPA.

27. In sending the unsolicited text messages at issue, Uber, or a third party acting on its behalf, utilized an automatic telephone dialing system; hardware and/or software with the

FIRST AMENDED CLASS ACTION COMPLAINT
-7-

capacity to store or produce cellular telephone number to be called, using a random or sequential number generator.  This is evident from the circumstances surrounding their auto-populated and otherwise generic content, that substantively identical texts were sent to multiple recipients, and that they were sent from a telephone number associated with a landline, which is consistent with the use of an automatic telephone dialing system to send text messages.[5]

**Plaintiff Lechner**

28. Lechner has never been or applied to become an Uber driver.

29. Notwithstanding, on April 18, 2018 at 11:06 am, Uber sent Lechner a text message from telephone number (419) 318-1232 to his cellular telephone number without his consent, soliciting him to engage as an Uber driver and start using the Uber Services, and paying Uber Fees to Uber for their use:

> Uber: Hi Jake, I'm your dedicated driver account specialist. Are you still interested in earning with Uber? I can help! Reply YES to chat

30. Uber's unsolicited text was a nuisance that aggravated Lechner, wasted his time, invaded his privacy, diminished the value of the cellular services he paid for, caused him to temporarily lose the use and enjoyment of his phone, and caused wear and tear to his phone's data, memory, software, hardware, and battery components.

31. On information and belief, Uber, or a third-party acting on its behalf, has sent

---

[5] Open Caller Listings, Listing Information for (408) 775-7154 (available at: http://opencallerlistings.com/listing/408-775-7154 (last accessed Apr. 26, 2018)).

substantively identical unsolicited text messages *en masse* to the cellular telephone numbers of other consumers nationwide that have never been or applied to become Uber drivers. To the extent the text messages were sent on Uber's behalf to consumers that have never been or applied to become Uber drivers, Uber authorized use of its trade name, otherwise controlled the content of the messages, and knew of, but failed to stop, the sending of the text messages in violation of the TCPA.

32.   In sending the unsolicited text messages at issue, Uber, or a third party acting on its behalf, utilized an automatic telephone dialing system; hardware and/or software with the capacity to store or produce cellular telephone number to be called, using a random or sequential number generator. This is evident from the circumstances surrounding the text messages, including the ability to trigger an automated response by replying "YES," their commercial and generic content, that substantively identical texts were sent to multiple recipients, and that they were sent from a telephone number associated with a landline, which is consistent with the use of an automatic telephone dialing system to send text messages.[6]

### Class Allegations

33.   Accordingly, Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and all others similarly situated and seek certification of the following Class:

> All persons who (1) on or after four years prior to the filing of the initial complaint in this action; (2) were sent a text message by or on behalf of Uber; (3) using an automatic telephone dialing system; (4) (a) for the purpose of soliciting their use of Uber's services as Uber drivers, or (b) with content intended for active Uber drivers; and (5) from whom Uber (a) does not allege to have consent, or (b) alleges to have obtained consent in the same manner it alleges to have obtained consent

---

[6] Open Caller Listings, Listing Information for (419) 318-1232 (available at: http://opencallerlistings.com/listing/419-318-1232 (last accessed May 7, 2018)).

from one of the Plaintiffs.

34. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiffs anticipate the need to amend the class definition following appropriate discovery.

35. **Numerosity**: The exact size of the Class is unknown and unavailable to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant sent unsolicited text messages to thousands of individuals who fall into the Class definition. Class membership can be easily determined from Defendant's records.

36. **Typicality**: Plaintiffs' claims are typical of the claims of the other members of the Class. Plaintiffs are members of the Class, and if Defendant violated the TCPA with respect to Plaintiffs, then it violated the TCPA with respect to the other members of the Class. Plaintiffs and the Class sustained the same damages as a result of Defendant's uniform wrongful conduct.

37. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    a) How Defendant gathered, compiled, or obtained the cellular telephone numbers of Plaintiffs and the Class;

    b) Whether the text messages were sent using an automatic telephone dialing system;

      c)      Whether Defendant's text messages were sent for the purpose of marketing Defendant's services;

      d)      Whether Defendant sent the text messages without the consent of Plaintiffs and the Class; and

      e)      Whether Defendant's conduct was willful and knowing such that Plaintiffs and the Class are entitled to treble damages.

38. **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs.

39. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class. Defendant's practices challenged herein apply to and affect the members of the Class uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to the Class, not on facts or law applicable only to Plaintiffs.

40. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies

presented in this case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION

### Violation of 47 U.S.C. § 227

### (On Behalf of Plaintiffs and the Class)

41.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 40 of this complaint and incorporates them by reference.

42.     Defendant and/or its agents agent transmitted text messages to cellular telephone numbers belonging to Plaintiffs and the other members of the Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

43.     These solicitation text messages were sent without the consent of Plaintiffs and the other members of the Class.

44.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii), and as a result, under 47 U.S.C. § 227(b)(3)(B), Plaintiffs and the Class are entitled to a minimum of $500.00 in damages for each violation.  In the event that the Court determines that Defendant's conduct was wilful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs and the Class.

## SECOND CAUSE OF ACTION

### (Violation of California's *Business & Professions Code* §§ 17200, *et seq.* (the "UCL"))

### (On Behalf of Plaintiffs and the Class)

45.     Plaintiffs repeats and reallege paragraphs 1 through 40 of this Complaint and incorporate them by reference.

46. The UCL defines unfair business competition to include any "unlawful" act or practice. *Business & Professions Code* § 17200.

47. A business practice is "unlawful" under the UCL if it violates any other law or regulation.

48. Defendant has engaged in unfair business competition and violated the UCL through its violations of the TCPA and its implementing regulations directed towards Plaintiffs and the general public.

49. Plaintiffs and the general public have been injured by Uber's violations of the UCL. The pervasiveness of Defendant's UCL violations, the absence of an existing relationship between Defendant and the consumers it targets with its texts, and the fact the Defendant's UCL violations have continued after the filing of this action, including towards Plaintiffs Fridman and Reznik, demonstrate that there is an ongoing threat of future injury to the general public.

50. As such, Plaintiffs request that the Court enjoin Defendant from continuing to violate the UCL and/or from violating the UCL in the future. Otherwise, Plaintiffs and the general public may be irreparably harmed and/or denied an effective remedy.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Fridman, Reznik, and Lechner, individually and on behalf of the Class, pray for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiffs as the representatives of the Class and their counsel as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA and UCL;

d) A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

e)       An injunction requiring Defendant to cease all unsolicited text messaging activity, and to otherwise protect the interests of the general public;

f)       An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, recipient's consent to receive calls made with such equipment; and

g)       Such further and other relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs request a trial by jury.

Dated:  August 17, 2018.

/s/ David S. Ratner

David S. Ratner, Esq. (SBN 316267)
David Ratner Law Firm, LLP
33 Julianne Court
Walnut Creek, CA 94595
Telephone: (917) 900-2868
Fax: (925) 891-3818
Email: david@davidratnerlawfirm.com

Avi R. Kaufman*
Kaufman P.A.
400 NW 26th Street
Miami, Florida 33127
Telephone: (305) 469-5881
Email: kaufman@kaufmanpa.com

Stefan Coleman*
Law Offices of Stefan Coleman, P.A.
201 South Biscayne Blvd, 28th Floor
Miami, Florida 33131
Telephone: (877) 333-9427
Fax: (888) 498-8946
Email: law@stefancoleman.com

*Counsel for Plaintiffs Fridman, Reznik, and Lechner, and all others similarly situated*

*Admitted pro hac vice

FIRST AMENDED CLASS ACTION COMPLAINT
-14-