UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL FRIDMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>Defendants. | Case No. 18-cv-02815-HSG<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION; DENYING MOTION TO STAY THE ACTION**<br><br>Re: Dkt. No. 49 |

Michael Fridman, Danny Gesel Reznik Fridman,[1] and Jake Lechner (collectively, "Plaintiffs") brought this putative class action against Defendants Uber Technologies, Inc., and its subsidiaries Rasier, LLC, and Portier, LLC (collectively, "Defendants" or "Uber"), alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and California unfair competition law. *See* First Amended Class Action Complaint ("FAC"), Dkt. 39 at 1–2.

Pending before the Court is Defendants' motion to compel arbitration and stay the action. *See* Dkt. No. 49 ("Mot.").

I. **BACKGROUND**

   A. **Factual Background**

      i. **Plaintiffs' Allegations**

Fridman alleges that he applied to become an Uber driver and entered into an agreement with Uber in June 2014, but that Uber "deactivated" him as a driver in January 2018. *See* FAC ¶¶ 14–16. Fridman asserts that on April 12, 2018, Uber sent him an unsolicited text message that read "Uber: Hi Michael, I'm your dedicated driver account specialist. Are you still interested in earning with Uber? I can help! Reply YES to chat[.]" *Id.* ¶ 17.

---
[1] The briefing refers to this Plaintiff as "Reznik," as will the Court.

Reznik alleges that he applied to become an Uber Eats driver in July 2017, but his application was "rejected and/or denied." *Id.* ¶ 22. However, Reznik claims that on April 21, 2018, Uber sent him an unsolicited text message that read "Uber: Danny, your Vehicle Insurance expires in 30 days. Once you get a new version of your document you can upload it here http://t.uber.com/expiry to keep your account active. Thanks!" *Id.* ¶ 23.

Lechner alleges that he "has never been or applied to become an Uber driver" but that Uber sent him an unsolicited text message on April 18, 2018 that read "Uber: Hi Jake, I'm your dedicated driver account specialist. Are you still interested in earning with Uber? I can help! Reply YES to chat[.]" *Id.* ¶¶ 28–29.

Plaintiffs claim that these unsolicited text messages, among others they received, entitle them and a putative class to relief under the federal Telephone Consumer Protection Act and, derivatively, California unfair competition law. *See id.* ¶¶ 41–50.

### ii. The Technology Services Agreements

Fridman agreed to a Technology Services Agreement ("TSA") with Uber subsidiary Rasier, LLC. *See* Mot. at 3–4; Opp. at 1–4. On the first page of the agreement, the TSA stated:

> IMPORTANT: PLEASE NOTE THAT TO USE THE UBER SERVICES, YOU MUST AGREE TO THE TERMS AND CONDITIONS SET FORTH BELOW. PLEASE REVIEW THE ARBITRATION PROVISION SET FORTH BELOW CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH THE COMPANY ON AN INDIVIDUAL BASIS, EXCEPT AS PROVIDED IN SECTION 15.3, THROUGH FINAL AND BINDING ARBITRATION UNLESS YOU CHOOSE TO OPT OUT OF THE ARBITRATION PROVISION. BY VIRTUE OF YOUR ELECTRONIC EXECUTION OF THIS AGREEMENT, YOU WILL BE ACKNOWLEDGING THAT YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS OF THIS AGREEMENT (INCLUDING THE ARBITRATION PROVISION) AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT BUSINESS DECISION. IF YOU DO NOT WISH TO BE SUBJECT TO ARBITRATION, YOU MAY OPT OUT OF THE ARBITRATION PROVISION BY FOLLOWING THE INSTRUCTIONS PROVIDED IN THE ARBITRATION PROVISION BELOW.

Declaration of Maxwell Watkins ("Watkins Decl."), Dkt. No. 49-3, Ex. C at 1 ("December 2015 TSA") (bolding omitted). Another section of the December 2015 TSA, titled "Arbitration Provision," stated:

> IMPORTANT: This Arbitration Provision will require you to resolve any claim that you may have against the Company or Uber on an individual basis, except as provided below, pursuant to the terms of the Agreement unless you choose to opt out of the Arbitration Provision. Except as provided below, this provision will preclude you from bringing any class, collective, or representative action (other than actions under the Private Attorneys General Act of 2004 ("PAGA"), California Labor Code § 2698 et seq. ("PAGA")) against the Company or Uber, and also precludes you from participating in or recovering relief under any current or future class, collective, or representative (non-PAGA) action brought against the Company or Uber by someone else.

*Id.* § 15.3. The Arbitration Provision further disclaimed:

> WHETHER TO AGREE TO ARBITRATION IS AN IMPORTANT BUSINESS DECISION. IT IS YOUR DECISION TO MAKE, AND YOU SHOULD NOT RELY SOLELY UPON THE INFORMATION PROVIDED IN THIS AGREEMENT AS IT IS NOT INTENDED TO CONTAIN A COMPLETE EXPLANATION OF THE CONSEQUENCES OF ARBITRATION. YOU SHOULD TAKE REASONABLE STEPS TO CONDUCT FURTHER RESEARCH AND TO CONSULT WITH OTHERS — INCLUDING BUT NOT LIMITED TO AN ATTORNEY — REGARDING THE CONSEQUENCES OF YOUR DECISION, JUST AS YOU WOULD WHEN MAKING ANY OTHER IMPORTANT BUSINESS OR LIFE DECISION.

*Id.* (bolding omitted). The Arbitration Provision stated that it "applies to any dispute arising out of or related to this Agreement or termination of the Agreement and survives after the Agreement terminates." *Id.* § 15.3(i). More specifically, the Arbitration Provision claimed that it:

> applies, without limitation, to all disputes between You and the Company or Uber, as well as all disputes between You and the Company's or Uber's fiduciaries, administrators, affiliates, subsidiaries, parents, and all successors and assigns of any of them, including but not limited to any disputes arising out of or related to this Agreement and disputes arising out of or related to your relationship with the Company, including termination of the relationship. This Arbitration Provision also applies, without limitation, to disputes regarding any city, county, state or federal wage-hour law, trade secrets, unfair competition, compensation, breaks and rest periods, expense reimbursement, termination, harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for individual claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, and all other similar federal and state statutory and common law claims.

*Id.* Further, the Arbitration Provision contained a delegation clause stating that:

> Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before any forum other than arbitration, with the exception of proceedings that must be exhausted under applicable law before pursuing a claim in a court of law or in any forum other than arbitration. Except as it otherwise provides, this Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action.
>
> Except as provided in Section 15.3(v), below, regarding the Class Action Waiver, such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters shall be decided by an Arbitrator and not by a court or judge. However, as set forth below, the preceding sentences shall not apply to disputes relating to the interpretation or application of the Class Action Waiver or PAGA Waiver below, including their enforceability, revocability or validity.

*Id.* (bolding omitted). Lastly, the Arbitration Provision stated that if "a JAMS arbitrator is used, then the JAMS Streamlined Arbitration Rules & Procedures rules will apply" (unless those rules conflicted with the TSA). *Id.* § 15.3(iii). This paragraph contained a URL linking to the JAMS Streamlined Arbitration Rules & Procedures. *See id.*

Reznik agreed to a TSA with Uber subsidiary Portier, LLC containing materially identical language. *See* Mot. at 3 n.4; Opp. at 3; Watkins Decl., Dkt. No. 49-3, Ex. H ("August 2016 TSA").

### B. Procedural History

Defendants filed a motion to compel arbitration and stay the action on September 14, 2018. *See* Dkt. No. 49 ("Mot."). Plaintiffs opposed on October 5, *see* Dkt. No. 57 ("Opp."), and Defendants replied on October 19, *see* Dkt. No. 59 ("Reply"). The Court held a hearing on December 20, after which it took the motion under submission. *See* Dkt. No. 66.

On February 11, 2019, the Court granted Defendants' motion to stay the action pending a decision on the motion to compel. *See* Dkt. No. 71.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, sets forth a policy favoring

4

arbitration agreements and establishes that a written arbitration agreement is "valid, irrevocable, and enforceable." 9 U.S.C. § 2; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (noting federal policy favoring arbitration). The FAA allows that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Federal policy is "simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989). Courts must resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Id.*

Arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In analyzing whether an arbitration agreement is valid and enforceable, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). In interpreting the validity and scope of an arbitration agreement, courts apply state law principles of contract formation and interpretation. *See Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998).

### III. DISCUSSION

Defendants moved to compel Fridman and Reznik to resolve their claims through arbitration and to stay the action pending resolution of the arbitrations. *See* Mot. at 1–2. The Court will consider each motion in turn.

#### A. Motion to Compel Arbitration

Defendants contend not only that Plaintiffs' substantive TCPA claims must be resolved in binding arbitration, but also that any of Plaintiffs' "'gateway' challenges to the validity of the Arbitration Provision . . . must be delegated to, and decided by, an arbitrator." *See* Mot. at 10–12. The Court agrees that Ninth Circuit precedent requires that all of Plaintiffs' challenges (including challenges to the scope of the arbitration agreement) must be decided by an arbitrator, and not by

5

this Court. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016).

Parties to an arbitration agreement "can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). However, "unlike the arbitrability of claims in general, whether the court or the arbitrator decides arbitrability is 'an issue for judicial determination unless the parties *clearly and unmistakably provide otherwise.*'" *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). "In other words, there is a presumption that courts will decide which issues are arbitrable; the federal policy in favor of arbitration does not extend to deciding questions of arbitrability." *Oracle*, 724 F.3d at 1072. Therefore, courts "apply a more rigorous standard" to gateway questions of arbitrability. *Momot v. Mastro*, 652 F.3d 982, 987–88 (9th Cir. 2011). "[C]lear and unmistakable 'evidence' of agreement to arbitrate arbitrability might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so." *Momot*, 652 F.3d at 988.

Defendants argue that the gateway question of arbitrability must be decided by the arbitrator and not by this Court for two reasons: (1) because the Arbitration Provision incorporates the JAMS rules, *see* Mot. at 11; and (2) because the Arbitration Provision contains a delegation clause, *see* Reply at 2–3. Because the Court finds that the delegation clause requires compelling arbitration under *Mohamed*, it need not (and does not) address Defendants' argument related to incorporation of the JAMS rules.

In *Mohamed*, the Ninth Circuit reversed the district court's findings that the delegation clauses at issue were not clear and unmistakable and that they were unconscionable. *See* 848 F.3d at 1208. There, Uber's delegation clauses stated:

> Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial.
> Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration

> Provision or any portion of the Arbitration Provision. . . . All such matters shall be decided by an Arbitrator and not by a court or judge.

*Id.* at 1207–08. The Ninth Circuit held that these "provisions clearly and unmistakably delegated the question of arbitrability to the arbitrator." *Id.* at 1209.

The delegation clauses in Fridman's and Reznik's Technology Service Agreements are nearly identical to the ones in *Mohamed*. *Compare* December 2015 TSA § 15.3(i) and August 2016 TSA § 15.3(i) *with Mohamed*, 848 F.3d at 1208. Despite the obvious similarity, Plaintiffs do not attempt to distinguish *Mohamed* or even mention it in their briefing. When questioned at the hearing, Plaintiffs explained that *Mohamed* was distinguishable because Plaintiffs were disputing the formation (rather than the scope) of the arbitration agreement, invoking principles of California contract law requiring a meeting of the minds for contract formation. *See* Transcript, Dkt. No. 70 at 5–6, 10–11. But Fridman and Reznik admitted that they entered into the Technology Services Agreements. Opp. at 1–4. And the terms of the delegation provision clearly and unmistakably delegate the gateway question of arbitrability to the arbitrator, no matter what Plaintiffs' purported subjective understanding of the terms of the agreement may have been. *See Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 107 Cal. Rptr. 2d 645, 651 (Cal. Ct. App. 2001) ("[O]ne who signs an instrument which on its face is a contract is deemed to assent to all its terms. A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing."). Because the Technology Service Agreements that Fridman and Reznik admit to entering into clearly and unmistakably delegate the issue of arbitrability to an arbitrator, the Court **GRANTS** Defendants' motion to compel arbitration as to Fridman and Reznik's claims.

### B. Motion to Stay

Defendants moved to stay the entire action. *See* Mot. at 19–20. Plaintiffs stated at the hearing that if the motion to compel arbitration was granted, they would prefer that Fridman and Reznik be dismissed from the action. *See* Transcript, Dkt. No. 70 at 13.

First, the Court concludes that dismissal is warranted as to Fridman and Reznik. In the Ninth Circuit, courts have discretion under Section 3 of the Federal Arbitration Act to either stay or dismiss claims that are subject to an arbitration agreement. *See Sparling v. Hoffman Constr.*

7

*Co.*, 864 F.2d 635, 638 (9th Cir. 1988); *see also Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 940 (9th Cir. 2009) ("If the court finds that an arbitration clause is valid and enforceable, the court should stay or dismiss the action to allow the arbitration to proceed."). "The choice matters for purposes of appellate jurisdiction: An order compelling arbitration and staying the action isn't immediately appealable . . . but an order compelling arbitration and dismissing the action is." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) (internal citations omitted). That said, the "preference" of the Ninth Circuit is to "stay[] an action pending arbitration rather than dismissing it." *MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4, 9 (9th Cir. 2014). Given that Plaintiffs have requested dismissal (presumably to appeal this order), and Defendants have not articulated any basis for why the claims should be stayed instead, the Court exercises its discretion to **DISMISS** Fridman and Reznik from the action.

Second, the Court finds that Lechner's claims should not be stayed pending resolution of Fridman and Reznik's arbitration. The decision whether to "stay litigation among the non-arbitrating parties pending the outcome of the arbitration . . . is one left to the district court . . . as a matter of its discretion to control its docket." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21 n.23. Lechner apparently has not agreed to resolve his claims through arbitration; thus, he should not be required to wait to litigate his case until an arbitrator rules on the claims of the other Plaintiffs who agreed to have their claims heard in that forum. *See Lee v. Postmates Inc.*, No. 18-CV-03421-JCS, 2018 WL 4961802, at *12 (N.D. Cal. Oct. 15, 2018) (denying request for stay as to plaintiffs who "might have validly opted out of arbitration" and thus had "a right to bring their claims in court that should not be delayed without good reason"). And though "[p]arallel proceedings may raise the risk of inconsistency, . . . inconsistency is possible even if the Court were to grant a stay." *McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2017 WL 4551484, at *5 (N.D. Cal. Oct. 11, 2017). Accordingly, the Court **DENIES** Defendants' motion to stay the action pending resolution of Fridman and Reznik's arbitrations.

//

//

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion to compel arbitration as to Fridman and Reznik and **DISMISSES** them from the action. In addition, the Court **DENIES** the motion to stay the action and **LIFTS** the current stay.

**IT IS SO ORDERED.**

Dated: 3/27/19

*Haywood S. Gilliam Jr.*
HAYWOOD S. GILLIAM, JR.
United States District Judge