1   TIFFANY CHEUNG (CA SBN 211497)
    TCheung@mofo.com
2   LUCIA X. ROIBAL (CA SBN 306721)
    LRoibal@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California  94105-2482
    Telephone: 415.268.7000
5   Facsimile: 415.268.7522

6   ADAM J. HUNT, *pro hac vice*
    AdamHunt@mofo.com
7   Morrison & Foerster LLP
    250 West 55th Street
8   New York, New York 10019-9601
    (212) 336-4341
9   (212) 468-7900 (fax)

10  Attorneys for Defendants
    UBER TECHNOLOGIES, INC., RASIER,
11  LLC and PORTIER, LLC

12                  UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14

15  MICHAEL FRIDMAN, DANNY GESEL          Case No.    4:18-cv-02815-HSG
    REZNIK FRIDMAN, and JAKE LECHNER,
16  individually and on behalf of all others similarly   **DEFENDANTS' ANSWER TO**
    situated,                                            **FIRST AMENDED CLASS**
17                                                       **ACTION COMPLAINT AND**
                                                         **DEMAND FOR JURY TRIAL**
18                  Plaintiffs,

19          v.

20  UBER TECHNOLOGIES, INC., a Delaware
    corporation, and RASIER, LLC, a Delaware
21  limited liability company, and PORTIER, LLC, a
    Delaware limited liability company,
22
                    Defendants.
23

24          Defendants Uber Technologies, Inc. ("Uber"), Rasier, LLC ("Rasier"), and Portier, LLC

25  ("Portier") (collectively "Defendants"), by and through their undersigned attorneys, hereby

26  answer the First Amended Class Action Complaint and Demand for Jury Trial (the "Complaint")

27  by Plaintiffs Michael Fridman ("Fridman"), Danny Gesel Reznik Fridman ("Reznik"), and Jake

28  Lechner (collectively "Plaintiffs").  Defendants repeat the headings contained in the Complaint

for ease of reference.  But to the extent that factual allegations are contained in the headings in the Complaint, Defendants deny such allegations, or are without sufficient knowledge or information to form a belief as to the truth of such allegations, and on that basis deny them.  Unless expressly admitted herein, Defendants lack sufficient information at this time to admit or deny the allegations of the Complaint and, on that basis, deny the allegations.  Defendants also are not required to answer any allegations made by Fridman or Reznik because their claims have been dismissed from this action.  (See ECF No. 72.)  Finally, Uber submits this Answer without waiving, and explicitly preserving, any contractual rights to compel Lechner to arbitrate his claims.

## NATURE OF THE ACTION

1.      This case challenges Defendant Uber's practice of sending unsolicited text messages to (1) former Uber drivers that Uber has terminated, (2) former applicants to become Uber drivers that Uber has rejected, and (3) other consumers that have never been or applied to become Uber drivers and/or have not otherwise had any relationship with Uber.

**ANSWER:**

Responding to paragraph 1 of the Complaint, Defendants state that, to the extent the allegations in paragraph 1 state conclusions of law, no response thereto is required.  To the extent the allegations contained in paragraph 1 do not state conclusions of law, Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 1 of the Complaint, and therefore deny them.  Further, to the extent that these allegations have been pleaded by Fridman and Reznik, no response is required because their claims have been dismissed from this case (*see* ECF No. 72).

2.      Uber's unsolicited texts violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, and caused Plaintiffs and putative members of the Class to suffer actual harm, including the aggravation, nuisance, loss of time, and invasions of privacy that result from the receipt of such text messages, lost value of cellular services paid for, and a loss of the use and enjoyment of their phones, including wear and tear to their phones' data, memory, software, hardware, and battery components, among other harms.

**ANSWER:**

Responding to paragraph 2 of the Complaint, Defendants state that the allegations in paragraph 2 state conclusions of law, and no response thereto is required.  To the extent the allegations contained in paragraph 1 do not state conclusions of law, Defendants deny the allegations in paragraph 2.  Further, to the extent that these allegations have been pleaded by Fridman and Reznik, no response is required because their claims have been dismissed from this case (*see* ECF No. 72).

3.      Accordingly, Plaintiffs seeks an injunction requiring Uber to cease sending unsolicited text messages to terminated drivers, rejected applicants, and other consumers from whom Uber does not have consent, as well as an award of actual and/or statutory damages and costs.

**ANSWER:**

Responding to paragraph 3 of the Complaint, Defendants state that the allegations in paragraph 3 state conclusions of law, and no response thereto is required.  Further, to the extent that these allegations have been pleaded by Fridman and Reznik, no response is required because their claims have been dismissed from this case (*see* ECF No. 72).

**PARTIES**

4.      Plaintiff Michael Fridman is a Florida resident who Uber terminated as an Uber driver in or around January 2018.

**ANSWER:**

Responding to paragraph 4 of the Complaint, Defendants state that no response is required because Fridman's claims have been dismissed from this action (*see* ECF No. 72).

5.      Plaintiff Danny Gesel Reznik Fridman is a Florida resident whose application become an Uber driver Uber rejected in or around July 2017.

**ANSWER:**

Responding to paragraph 5 of the Complaint, Defendants state that no response is required because Reznik's claims have been dismissed from this action (*see* ECF No. 72).

6.     Plaintiff Jake Lechner is a Michigan resident that has never been or applied to become an Uber driver.

**ANSWER:**

Responding to paragraph 5 of the Complaint, Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations regarding Mr. Lechner's state of residence at the time the Complaint was filed. Defendants deny the remainder of the allegations contained in paragraph 6 of the Complaint.

7.     Defendant Uber Technologies, Inc. is a Delaware corporation headquartered in San Francisco, California.

**ANSWER:**

Defendants admit the allegations contained in paragraph 7 of the Complaint.

8.     Defendant Rasier, LLC is a Delaware limited liability company headquartered in San Francisco, California.

**ANSWER:**

Defendants admit the allegations contained in paragraph 8 of the Complaint, but deny that Rasier is a proper defendant in this action.

9.     Defendant Portier, LLC is a Delaware limited liability company headquartered in San Francisco, California.

**ANSWER:**

Defendants admit the allegations contained in paragraph 9 of the Complaint, but deny that Portier is a proper defendant in this action.

<strong><u>JURISDICTION AND VENUE</u></strong>

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1367 as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

**ANSWER:**

Responding to paragraph 10 of the Complaint, Defendants state that the allegations in paragraph 10 state conclusions of law, and no response thereto is required.

11.     The Court has personal jurisdiction over Defendant and venue is proper in this District because Uber's unauthorized texts giving rise to Plaintiffs' claims arose and emanated from this District, and because Uber maintains its primary place of business in this District.

**ANSWER:**

Responding to paragraph 11 of the Complaint, Defendants state that, to the extent the allegations in paragraph 11 state conclusions of law, no response thereto is required.  To the extent the allegations contained in paragraph 11 do not state conclusions of law, Defendants deny each and every allegation contained in paragraph 11, except admits that Uber's principal place of business is San Francisco, California.

**FACTUAL ALLEGATIONS**

12.     Uber is a multinational company that offers on-demand lead generation, payment processing, and related services to transportation providers (i.e., Uber and Uber Eats drivers) for a fee.[1]

**ANSWER:**

Responding to paragraph 12 of the Complaint, Defendants deny the allegations except admits that Uber offers software applications that allow the public to request transportation services or food delivery services from independent, third-party providers.  Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Complaint to the extent that they rely on content that is not accessible through the hyperlinks cited in footnote 1, and therefore deny them.

13.     In order to drum up business from transportation providers, Uber sends unsolicited text messages to consumers that either Uber terminated as drivers, had applications to become

---

[1] *See, e.g.*, Software License and Online Services Agreement dated June 21, 2014 at §§ 1, 4.4 (available at: https://uber-regulatory-documents.s3.amazonaws.com/country/united_states/p2p/ Partner %20Agreement%20November%2010%202014.pdf (last accessed Apr. 26, 2018)). See also Uber agreement in effect after April 3, 2015, defining providers of transportation services to be Uber's "Customers" (available at: https://uber-regulatory-documents.s3.amazonaws.com/ country/united_states/licensed/Transportation%20Company%20Agreement%20April%207%202 015.pdf (last accessed Apr. 26, 2018)).

drivers denied by Uber, or never were or applied to become Uber drivers. As part of these marketing efforts, Uber also sends unsolicited text messages to consumers that have never had any relationship with Uber.

**ANSWER:**

Responding to paragraph 13 of the Complaint, Defendants deny each any every allegation contained in Paragraph 13 of the Complaint.

**Plaintiff Fridman**

14.     In June 2014, Fridman applied to become an Uber driver. As part of becoming an Uber driver, Fridman entered into a licensing agreement with Uber specifying the fees payable by Fridman for use of the "Uber Services" and permitting Uber to unilaterally terminate the parties' relationship at any time.[2]

**ANSWER:**

Responding to paragraph 14 of the Complaint, Defendants state that no response is required because Fridman's claims have been dismissed from this action (*see* ECF No. 72).

15.     As an Uber driver, Fridman necessarily used, and paid Uber for using, the Uber Services. For example, between May 15 and May 22, 2016, Fridman used the Uber Services 23 times and paid "Uber Fees" totaling $57.80 for doing so.

**ANSWER:**

Responding to paragraph 15 of the Complaint, Defendants state that no response is required because Fridman's claims have been dismissed from this action (*see* ECF No. 72).

16.     On or about January 30, 2018, Uber unilaterally deactivated Fridman as an Uber driver, terminating the agreement and relationship between Uber and Fridman.[3]

---

[2] *See* Software License and Online Services Agreement dated June 21, 2014 at § 12. *See also* Uber's driver agreement in effect until June 21, 2014, providing for automatic termination in the event that a driver failed to use the Uber Services for 180 days, as Plaintiff did prior to Uber terminating its agreement and relationship with him (available at: http://webcache.google usercontent.com/ search?q=cache:BDJP0clHHMQJ:hostcarsla.com/Software%2520License %2520and%2520Online%2520Services%2520Agreement.pdf+&cd=22&hl=en&ct=clnk&gl=us (last accessed Apr. 26, 2018)).

[3] *See* Ricotta & Marks, P.C., *Wrongfully Terminated from Uber or Lyft? Know Your Rights* (available at: http://www.queensemploymentattorney.com/blog/2017/12/uber-lyft-driver¬termination-rights/ (last accessed Apr. 26, 2018)) ("For Uber drivers, terminations are

1    **ANSWER:**

2         Responding to paragraph 16 of the Complaint, Defendants state that no response is

3    required because Fridman's claims have been dismissed from this action (*see* ECF No. 72).

4         17.    Notwithstanding, months later, on April 12, 2018 at 3:50 pm, after terminating its

5    relationship with Fridman, Uber sent Fridman a text message from telephone number (843) 485-

6    0796 to his cellular telephone number without his consent, soliciting him to reengage as an Uber

7    driver and start using the Uber Services, and paying Uber Fees to Uber for their use, again:

8

9    Uber: Hi Michael, I'm your

10   dedicated driver account

11   specialist. Are you still

12   interested in earning with

13   Uber? I can help! Reply YES

     to chat

14

15   **ANSWER:**

16        Responding to paragraph 17 of the Complaint, Defendants state that no response is

17   required because Fridman's claims have been dismissed from this action (*see* ECF No. 72).

18        18.    And even after bringing suit against Defendant for violation of the TCPA, Fridman

19   has continued to receive unsolicited text messages from Defendant.

20   **ANSWER:**

21        Responding to paragraph 18 of the Complaint, Defendants state that no response is

22   required because Fridman's claims have been dismissed from this action (*see* ECF No. 72).

23

24   _____

25   known as 'deactivations.' This is because when a driver is fired, his or her account is deactivated.
     Drivers must comply with certain rules to avoid deactivation, such as: Owning and using a
     vehicle that meets Uber's vehicle requirements; Pass a background check; Pass a driving record
26   check; Have a valid in-state driver's license; Be up to date with vehicle insurance and
     registration; and Have in-state automobile insurance with the driver's name on the policy. ...
27   Terminating a driver for failing to comply with one of the requirements listed above is perfectly
     acceptable.").

28

19.     Uber's unsolicited text was a nuisance that aggravated Fridman, wasted his time, invaded his privacy, diminished the value of the cellular services he paid for, caused him to temporarily lose the use and enjoyment of his phone, and caused wear and tear to his phone's data, memory, software, hardware, and battery components.

**ANSWER:**

Responding to paragraph 19 of the Complaint, Defendants state that no response is required because Fridman's claims have been dismissed from this action (*see* ECF No. 72).

20.     On information and belief, Uber, or a third-party acting on its behalf, has sent substantively identical unsolicited text messages en masse to the cellular telephone numbers of other former Uber drivers nationwide that, at the time the text messages were sent, had been terminated by, and no longer had any agreement or relationship with, Uber. Uber, or a third-party acting on its behalf, also sent substantively identical texts to the cellular telephone numbers of other consumers that have never been Uber drivers. To the extent the text messages were sent on Uber's behalf to former Uber drivers and other consumers, Uber provided the third-party access to former drivers' records, authorized use of its trade name, otherwise controlled the content of the messages, and knew of, but failed to stop, the sending of the text messages in violation of the TCPA.

**ANSWER:**

Responding to paragraph 20 of the Complaint, Defendants state that no response is required because Fridman's claims have been dismissed from this action (*see* ECF No. 72).

21.     In sending the unsolicited text messages at issue, Uber, or a third party acting on its behalf, utilized an automatic telephone dialing system; hardware and/or software with the capacity to store or produce cellular telephone number to be called, using a random or sequential number generator. This is evident from the circumstances surrounding the text messages, including the ability to trigger an automated response by replying "YES," their commercial and generic content, that substantively identical texts were sent to multiple recipients, and that they

1   were sent from a telephone number associated with a landline, which is consistent with the use of

2   an automatic telephone dialing system to send text messages.[4]

3   **ANSWER:**

4      Responding to paragraph 21 of the Complaint, Defendants state that no response is

5   required because Fridman's claims have been dismissed from this action (*see* ECF No. 72).

6   **Plaintiff Reznik**

7      22.    In July 2017, Reznik applied to become an Uber Eats driver, but Uber rejected

8   and/or denied his application, terminating any prospective agreement or relationship between

9   Reznik and Uber.

10   **ANSWER:**

11      Responding to paragraph 22 of the Complaint, Defendants state that no response is

12   required because Reznik's claims have been dismissed from this action (*see* ECF No. 72).

13      23.    Notwithstanding, months later, on April 21, 2018 at 4:05 pm, Uber sent Reznik a

14   text message from telephone number (408) 775-7154 to his cellular telephone number without his

15   consent, with a message intended exclusively for active Uber drivers:

> Uber: Danny, your Vehicle Insurance expires in 30 days. Once you get a new version of your document you can upload it here http://t.uber.com/expiry to keep your account active. Thanks!

23   **ANSWER:**

24      Responding to paragraph 23 of the Complaint, Defendants state that no response is

25   required because Reznik's claims have been dismissed from this action (*see* ECF No. 72).

---

27      [4] Open Caller Listings, Listing Information for 843-485-0796 (available at:

28   http://opencallerlistings.com/listing/843-485-0796 (last accessed Apr. 26, 2018)).

24.      Weeks later, on May 14, 2018 at 4:06 pm – the day after this action was filed – Uber sent Reznik a nearly identical text message from telephone number (669) 248-8113 intended exclusively for active Uber drivers:

> Uber: Danny, your Vehicle Insurance expires in 7 days. Upload the latest version as soon as possible at http://t.uber.com/expiry to keep your Uber partner account active. Thanks!

**ANSWER:**

Responding to paragraph 24 of the Complaint, Defendants state that no response is required because Reznik's claims have been dismissed from this action (*see* ECF No. 72).

25.      Uber's unsolicited texts were a nuisance that aggravated Reznik, wasted his time, invaded his privacy, diminished the value of the cellular services he paid for, caused him to temporarily lose the use and enjoyment of his phone, and caused wear and tear to his phone's data, memory, software, hardware, and battery components.

**ANSWER:**

Responding to paragraph 25 of the Complaint, Defendants state that no response is required because Reznik's claims have been dismissed from this action (*see* ECF No. 72).

26.      On information and belief, Uber, or a third-party acting on its behalf, has sent substantively identical unsolicited text messages en masse to the cellular telephone numbers of other consumers nationwide whose applications to become Uber drivers Uber rejected and/or denied, and who never had any subsequent agreement or relationship with Uber. Uber, or a third-party acting on its behalf, also sent substantively identical texts to the cellular telephone numbers of other consumers that have never applied to become Uber drivers. To the extent the text messages were sent on Uber's behalf to applicants that Uber rejected and/or denied and other consumers, Uber provided the third-party access to the applicants' records, authorized use of its

1  trade name, otherwise controlled the content of the messages, and knew of, but failed to stop, the

2  sending of the text messages in violation of the TCPA.

3  **ANSWER:**

4        Responding to paragraph 26 of the Complaint, Defendants state that no response is

5  required because Reznik's claims have been dismissed from this action (*see* ECF No. 72).

6        27.     In sending the unsolicited text messages at issue, Uber, or a third party acting on

7  its behalf, utilized an automatic telephone dialing system; hardware and/or software with the

8  capacity to store or produce cellular telephone number to be called, using a random or sequential

9  number generator. This is evident from the circumstances surrounding their auto-populated and

10  otherwise generic content, that substantively identical texts were sent to multiple recipients, and

11  that they were sent from a telephone number associated with a landline, which is consistent with

12  the use of an automatic telephone dialing system to send text messages.[5]

13  **ANSWER:**

14        Responding to paragraph 27 of the Complaint, Defendants state that no response is

15  required because Reznik's claims have been dismissed from this action (*see* ECF No. 72).

16                                   **Plaintiff Lechner**

17        28.     Lechner has never been or applied to become an Uber driver.

18  **ANSWER:**

19        Responding to paragraph 28 of the Complaint, Defendants deny the allegations contained

20  in paragraph 28 of the Complaint.

21        29.     Notwithstanding, on April 18, 2018 at 11:06 am, Uber sent Lechner a text message

22  from telephone number (419) 318-1232 to his cellular telephone number without his consent,

23  soliciting him to engage as an Uber driver and start using the Uber Services, and paying Uber

24  Fees to Uber for their use:

25

26

27        [5] Open Caller Listings, Listing Information for (408) 775-7154 (available at:
http://opencallerlistings.com/listing/408-775-7154 (last accessed Apr. 26, 2018)).

28

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 4:18-cv-02815-HSG
sf-4011750

11

1
2
3
4
5
6
7

> Uber: Hi Jake, I'm your dedicated driver account specialist. Are you still interested in earning with Uber? I can help! Reply YES to chat

8 **ANSWER:**

9      Responding to paragraph 29 of the Complaint, Defendants state that, to the extent the

10 allegations in paragraph 29 state conclusions of law, no response thereto is required.  To the

11 extent the allegations contained in paragraph 29 do not state conclusions of law, Defendants deny

12 the allegations in paragraph 29 of the Complaint.

13      30.    Uber's unsolicited text was a nuisance that aggravated Lechner, wasted his time,

14 invaded his privacy, diminished the value of the cellular services he paid for, caused him to

15 temporarily lose the use and enjoyment of his phone, and caused wear and tear to his phone's

16 data, memory, software, hardware, and battery components.

17 **ANSWER:**

18      Responding to paragraph 30 of the Complaint, Defendants lack information or knowledge

19 sufficient to form a belief as to the truth of the allegations in paragraph 30 of the Complaint, and

20 therefore deny them.

21      31.    On information and belief, Uber, or a third-party acting on its behalf, has sent

22 substantively identical unsolicited text messages en masse to the cellular telephone numbers of

23 other consumers nationwide that have never been or applied to become Uber drivers. To the

24 extent the text messages were sent on Uber's behalf to consumers that have never been or applied

25 to become Uber drivers, Uber authorized use of its trade name, otherwise controlled the content

26 of the messages, and knew of, but failed to stop, the sending of the text messages in violation of

27 the TCPA.

28

**ANSWER:**

Responding to paragraph 31 of the Complaint, Defendants deny the allegations contained in paragraph 31.

32.     In sending the unsolicited text messages at issue, Uber, or a third party acting on its behalf, utilized an automatic telephone dialing system; hardware and/or software with the capacity to store or produce cellular telephone number to be called, using a random or sequential number generator. This is evident from the circumstances surrounding the text messages, including the ability to trigger an automated response by replying "YES," their commercial and generic content, that substantively identical texts were sent to multiple recipients, and that they were sent from a telephone number associated with a landline, which is consistent with the use of an automatic telephone dialing system to send text messages.[6]

**ANSWER:**

Responding to paragraph 32 of the Complaint, Defendants state that, to the extent the allegations in paragraph 32 state conclusions of law, no response thereto is required.  To the extent the allegations contained in paragraph 32 do not state conclusions of law, Defendants deny the allegations contained in paragraph 32.

## CLASS ALLEGATIONS

33.     Accordingly, Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and all others similarly situated and seek certification of the following Class:

> All persons who (1) on or after four years prior to the filing of the initial complaint in this action; (2) were sent a text message by or on behalf of Uber; (3) using an automatic telephone dialing system; (4) (a) for the purpose of soliciting their use of Uber's services as Uber drivers, or (b) with content intended for active Uber drivers; and (5) from whom Uber (a) does not allege to have consent, or (b) alleges to have obtained consent in the same manner it alleges to have obtained consent from one of the Plaintiffs.

---

[6] Open Caller Listings, Listing Information for (419) 318-1232 (available at: http://opencallerlistings.com/listing/419-318-1232 (last accessed May 7, 2018)).

1   **ANSWER:**

2          Responding to paragraph 33 of the Complaint, Defendants state that Plaintiffs purport to

3   bring claims on behalf of all other persons or entities as described in paragraph 33, but deny that

4   any class can be certified in this matter.  Defendants further state that, to the extent the allegations

5   in paragraph 33 state conclusions of law, no response thereto is required.  To the extent the

6   allegations contained in paragraph 33 do not state conclusions of law, Defendants deny each of

7   the allegations contained in paragraph 33.

8          34.     The following individuals are excluded from the Class: (1) any Judge or

9   Magistrate presiding over this action and members of their families; (2) Defendant, its

10  subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents

11  have a controlling interest and their current or former employees, officers and directors;

12  (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion

13  from the Class; (5) the legal representatives, successors or assigns of any such excluded persons;

14  and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or

15  released. Plaintiffs anticipate the need to amend the class definition following appropriate

16  discovery.

17  **ANSWER:**

18         Responding to paragraph 33 of the Complaint, Defendants state that Plaintiffs purport to

19  exclude certain persons or entities from the putative class as described in paragraph 34, but deny

20  that any class can be certified in this matter.  Defendants further state that the allegations in

21  paragraph 33 state conclusions of law, and no response thereto is required.

22         35.     **Numerosity**: The exact size of the Class is unknown and unavailable to Plaintiffs

23  at this time, but it is clear that individual joinder is impracticable. On information and belief,

24  Defendant sent unsolicited text messages to thousands of individuals who fall into the Class

25  definition. Class membership can be easily determined from Defendant's records.

26  **ANSWER:**

27         Responding to paragraph 35 of the Complaint, Defendants state that, to the extent the

28  allegations in paragraph 35 state conclusions of law, no response thereto is required.  To the

1  extent the allegations contained in paragraph 35 do not state conclusions of law, Defendants deny

2  the allegations contained in paragraph 35.  Defendants deny that class treatment is appropriate.

3      36.    **Typicality**: Plaintiffs' claims are typical of the claims of the other members of the

4  Class. Plaintiffs are members of the Class, and if Defendant violated the TCPA with respect to

5  Plaintiffs, then it violated the TCPA with respect to the other members of the Class. Plaintiffs and

6  the Class sustained the same damages as a result of Defendant's uniform wrongful conduct.

7  **ANSWER:**

8      Responding to paragraph 36 of the Complaint, Defendants state that, to the extent the

9  allegations in paragraph 36 state conclusions of law, no response thereto is required.  To the

10  extent the allegations contained in paragraph 36 do not state conclusions of law, Defendants deny

11  the allegations contained in paragraph 36.  Defendants deny that class treatment is appropriate.

12      37.    **Commonality and Predominance**: There are many questions of law and fact

13  common to the claims of Plaintiffs and the Class, and those questions predominate over any

14  questions that may affect individual members of the Class. Common questions for the Class

15  include, but are not necessarily limited to the following:

16      a)  How Defendant gathered, compiled, or obtained the cellular telephone

17          numbers of Plaintiffs and the Class;

18      b)  Whether the text messages were sent using an automatic telephone dialing

19          system;

20      c)  Whether Defendant's text messages were sent for the purpose of marketing

21          Defendant's services;

22      d)  Whether Defendant sent the text messages without the consent of Plaintiffs and

23          the Class; and

24      e)  Whether Defendant's conduct was willful and knowing such that Plaintiffs and

25          the Class are entitled to treble damages.

26  **ANSWER:**

27      Responding to paragraph 37 of the Complaint and each of its subparts, Defendants state

28  that, to the extent the allegations in paragraph 37 state conclusions of law, no response thereto is

required.  To the extent the allegations contained in paragraph 37 and its subparts do not state conclusions of law, Defendants deny the allegations contained in paragraph 37.  Defendants deny that class treatment is appropriate.

38.   **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs.

**ANSWER:**

Responding to paragraph 38 of the Complaint, Defendants state that, to the extent the allegations in paragraph 38 state conclusions of law, no response thereto is required.  To the extent the allegations contained in paragraph 38 do not state conclusions of law, Defendants deny the allegations contained in paragraph 38.  Defendants deny that class treatment is appropriate.

39.   **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class. Defendant's practices challenged herein apply to and affect the members of the Class uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to the Class, not on facts or law applicable only to Plaintiffs.

**ANSWER:**

Responding to paragraph 39 of the Complaint, Defendants state that, to the extent the allegations in paragraph 39 state conclusions of law, no response thereto is required.  To the extent the allegations contained in paragraph 39 do not state conclusions of law, Defendants deny the allegations contained in paragraph 9.  Defendants deny that class treatment is appropriate.

40.   **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and

1    expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

2    Thus, it would be virtually impossible for the individual members of the Class to obtain effective

3    relief from Defendant's misconduct. Even if members of the Class could sustain such individual

4    litigation, it would still not be preferable to a class action, because individual litigation would

5    increase the delay and expense to all parties due to the complex legal and factual controversies

6    presented in this case. By contrast, a class action presents far fewer management difficulties and

7    provides the benefits of single adjudication, economy of scale, and comprehensive supervision by

8    a single court. Economies of time, effort, and expense will be fostered and uniformity of

9    decisions ensured.

10   **ANSWER:**

11           Responding to paragraph 40 of the Complaint, Defendants state that, to the extent the

12   allegations in paragraph 40 state conclusions of law, no response thereto is required.  To the

13   extent the allegations contained in paragraph 40 do not state conclusions of law, Defendants deny

14   the allegations contained in paragraph 40.  Defendants deny that class treatment is appropriate.

15                              **FIRST CAUSE OF ACTION**
                               **Violation of 47 U.S.C. § 227**
16
                            **(On Behalf of Plaintiffs and the Class)**
17

18           41.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 40 of this

19   complaint and incorporates them by reference.

20   **ANSWER:**

21           Responding to paragraph 41 of the Complaint, Defendants restate and incorporate by

22   reference each and every preceding paragraph of this Answer as if fully set forth herein.

23           42.     Defendant and/or its agents agent transmitted text messages to cellular telephone

24   numbers belonging to Plaintiffs and the other members of the Class using equipment that, upon

25   information and belief, had the capacity to store or produce telephone numbers to be called, using

26   a random or sequential number generator.

27   **ANSWER:**

28           Responding to paragraph 42 of the Complaint, Defendants state that, to the extent the

1   allegations in paragraph 42 state conclusions of law, no response thereto is required.  To the

2   extent the allegations contained in paragraph 40 do not state conclusions of law, Defendants deny

3   the allegations contained in paragraph 42.

4       43.     These solicitation text messages were sent without the consent of Plaintiffs and the

5   other members of the Class.

6   **ANSWER:**

7       Responding to paragraph 43 of the Complaint, Defendants state that, to the extent the

8   allegations in paragraph 43 state conclusions of law, no response thereto is required.  To the

9   extent the allegations contained in paragraph 43 do not state conclusions of law, Defendants deny

10  the allegations contained in paragraph 43.

11      44.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii), and as a result,

12  under 47 U.S.C. § 227(b)(3)(B), Plaintiffs and the Class are entitled to a minimum of $500.00 in

13  damages for each violation. In the event that the Court determines that Defendant's conduct was

14  wilful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory

15  damages recoverable by Plaintiffs and the Class.

16  **ANSWER:**

17      Responding to paragraph 44 of the Complaint, Defendants state that, to the extent the

18  allegations in paragraph 44 state conclusions of law, no response thereto is required.  To the

19  extent the allegations contained in paragraph 44 do not state conclusions of law, Defendants deny

20  the allegations contained in paragraph 44.

21  

**SECOND CAUSE OF ACTION**

22  **(Violation of California's *Business & Professions Code* §§ 17200, *et seq*. (the "UCL"))**

23  **(On Behalf of Plaintiffs and the Class)**

24      45.     Plaintiffs repeats and reallege paragraphs 1 through 40 of this Complaint and

25  incorporate them by reference.

26  **ANSWER:**

27      Responding to paragraph 45 of the Complaint, Defendants restate and incorporate by

28  reference each and every preceding paragraph of this Answer as if fully set forth herein.

46.     The UCL defines unfair business competition to include any "unlawful" act or practice. *Business & Professions Code* § 17200.

**ANSWER:**

Responding to paragraph 46 of the Complaint, Defendants state that the allegations in paragraph 46 state conclusions of law, and no response thereto is required.

47.     A business practice is "unlawful" under the UCL if it violates any other law or regulation.

**ANSWER:**

Responding to paragraph 47 of the Complaint, Defendants state that the allegations in paragraph 47 state conclusions of law, and no response thereto is required.

48.     Defendant has engaged in unfair business competition and violated the UCL through its violations of the TCPA and its implementing regulations directed towards Plaintiffs and the general public.

**ANSWER:**

Responding to paragraph 48 of the Complaint, Defendants state that, to the extent the allegations in paragraph 48 state conclusions of law, no response thereto is required.  To the extent the allegations contained in paragraph 48 do not state conclusions of law, Defendants deny the allegations contained in paragraph 48.

49.     Plaintiffs and the general public have been injured by Uber's violations of the UCL. The pervasiveness of Defendant's UCL violations, the absence of an existing relationship between Defendant and the consumers it targets with its texts, and the fact the Defendant's UCL violations have continued after the filing of this action, including towards Plaintiffs Fridman and Reznik, demonstrate that there is an ongoing threat of future injury to the general public.

**ANSWER:**

Responding to paragraph 49 of the Complaint, Defendants state that, to the extent the allegations in paragraph 49 state conclusions of law, no response thereto is required.  To the extent the allegations contained in paragraph 49 do not state conclusions of law, Defendants deny the allegations contained in paragraph 49.

50.     As such, Plaintiffs request that the Court enjoin Defendant from continuing to violate the UCL and/or from violating the UCL in the future. Otherwise, Plaintiffs and the general public may be irreparably harmed and/or denied an effective remedy.

**ANSWER:**

Responding to paragraph 50 of the Complaint, Defendants state that, to the extent the allegations in paragraph 50 state conclusions of law, no response thereto is required.  To the extent the allegations contained in paragraph 50 do not state conclusions of law, Defendants deny the allegations contained in paragraph 50.

<b>AFFIRMATIVE DEFENSES</b>

Defendants deny that Lechner or members of the putative class are entitled to any relief in this action.  As to the affirmative defenses to the Complaint, Defendants do not, by stating the matters set forth in these defenses, allege or admit that they have the burden of proof and/or persuasion with respect to any of these matters, and do not assume the burden of proof or persuasion as to any matters as to which Lechner has the burden of proof or persuasion.

<b>FIRST AFFIRMATIVE DEFENSE</b>

The Complaint fails to state a claim upon which relief may be granted because Lechner and or/members of the putative class consented to receive the text messages at issue from Uber.

<b>SECOND AFFIRMATIVE DEFENSE</b>

Lechner lacks standing because Lechner consented to receive text messages from Uber and therefore has not suffered any cognizable injury-in-fact sufficient to establish subject matter jurisdiction under Article III of the United States Constitution.

<b>THIRD AFFIRMATIVE DEFENSE</b>

Lechner and the members of the Putative Class are barred from relief in this action, in whole or in part, because they have released their claims, including pursuant to the class action settlement in *Vergara, et al. v. Uber Technologies, Inc.*, No. 1:15-cv-06942 (N.D. Ill.).

<b>FOURTH AFFIRMATIVE DEFENSE</b>

Lechner and members of the Putative Class are barred from relief in this action, in whole or in part, to the extent that any of the text messages at issue in this case were sent to a telephone

1  number shared by, or assumed by, or otherwise associated with a person or business who had

2  consented to receive the text messages at issue.

3  ### FIFTH AFFIRMATIVE DEFENSE

4  Lechner and members of the Putative Class are barred from seeking any injunctive relief

5  in this action, in whole or in part, because Plaintiff and the members of the Putative class have an

6  adequate remedy at law.

7  ### SIXTH AFFIRMATIVE DEFENSE

8  To the extent that Lechner or the members of the Putative Class have suffered injury or

9  damages, such injury or damages were not caused by any conduct or inaction by Uber but were

10  caused by others, were not foreseeable, or both.

11  ### SEVENTH AFFIRMATIVE DEFENSE

12  Lechner's and the Putative Class members' claims are barred because the TCPA penalty

13  provision is unconstitutional under the United States Constitute as an excessive fine.  With

14  respect to Lechner's claim for damages, Uber incorporates all limitations on damage awards,

15  including the decisions in *BMW of North America v. Gore*, 517 U.S. 559 (1996) and *State Farm*

16  *Mutual Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

17  ### EIGHTH AFFIRMATIVE DEFENSE

18  The claims of Lechner and/or the Putative Class are barred because they did not sustain

19  any loss, damage, harm, or detriment as a result of any acts or omissions by Uber.

20  ### NINTH AFFIRMATIVE DEFENSE

21  The claims of Lechner and/or the Putative Cass are barred because the damages claimed

22  by Plaintiff in the Complaint are too speculative to support any cognizable claim for relief.

23  ### TENTH AFFIRMATIVE DEFENSE

24  Lechner and members of the Putative Class are barred from relief in this action because

25  the TCPA violates the First Amendment of the United States Constitution.

26  ### ELEVENTH AFFIRMATIVE DEFENSE

27  Members of the Putative Class are barred from seeking relief in this forum, in whole or in

28

1  part, because they agreed to arbitrate their claims against Uber.

2  ### TWELVETH AFFIRMATIVE DEFENSE

3  Subject to its ongoing factual investigation, Lechner is barred from seeking relief in this

4  forum, in whole or in part, if he agreed to arbitrate his claims against Uber.  Uber will move to

5  compel arbitration promptly upon uncovering information that Lechner entered into a valid,

6  binding arbitration agreement with Uber.

7  ### RESERVATION OF RIGHTS

8  Defendants hereby give notice that they intend to rely upon such other further affirmative

9  defenses as may become available during discovery in this action and reserve the right to amend

10  their Answer to assert any such defenses as necessary.  In particular, Uber is continuing to

11  investigate Lechner and reserves its rights to file a motion to compel arbitration based on its

12  findings.

13  ### PRAYER FOR RELIEF

14  WHEREFORE, on the purported claims for relief asserted against Defendants in the

15  Complaint, Defendants pray for judgment as follows:

16  That Lechner's request for certification of a class be denied;

17  That the relief sought by Lechner in the Prayer for Relief of the Complaint be denied;

18  That the Complaint be dismissed in its entirety, judgment be entered in favor of

19  Defendants, and that the Court award Uber reasonable attorneys' fees and expenses and the costs

20  and disbursements of defending this action, along with such other and further relief as the Court

21  deems just and proper.

22

23

24

25

26

27

28

1

Dated:  April 17, 2019

TIFFANY CHEUNG
ADAM J. HUNT *pro hac vice*
LUCIA X. ROIBAL
MORRISON & FOERSTER LLP

2

3

4

5

By:    */s/ Tiffany Cheung*
         TIFFANY CHEUNG

6

Attorneys for Defendants
UBER TECHNOLOGIES, INC.,
RASIER, LLC and PORTIER, LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 4:18-cv-02815-HSG
sf-4011750

23